UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                Plaintiff,                                  Case No. 14-cv-11700

                                                           Paul D. Borman
v.                                                         United States District Judge

POINTE PHYSICAL THERAPY, LLC,
et al.,

                Defendants.

_____/

OPINION AND ORDER (1) DENYING DEFENDANTS RAM GUNABALAN, M.D.,
MICHIGAN VISITING PHYSICIANS, PC, MUNDY PAIN CLINIC, AND BIO-MAGNETIC
RESONANCE, INC.'S (CORRECTED) MOTION TO DISMISS RICO CLAIMS BASED ON
REVERSE PREEMPTION OF THE MCCARRAN-FERGUSON ACT (ECF NO. 41) AND
(2) DENYING DEFENDANT BIO-MAGNETIC RESONANCE, INC.'S (CORRECTED)
MOTION TO DISMISS OR DECLINE JURISDICTION OVER DECLARATORY
JUDGMENT CLAIM (ECF NO. 42)

      Before the Court are: (1) Defendants Ram Gunabalan, M.D. ("Gunabalan"), Michigan

Visiting Physicians, PC, ("Visiting Physicians"), Mundy Pain Clinic ("Mundy"), and Bio-Magnetic

Resonance, Inc.'s ("Bio-Magnetic") (Corrected) Motion to Dismiss RICO Claims Based on Reverse

Preemption of the McCarran-Ferguson Act. (ECF No. 41.)[1]  Plaintiff State Farm Mutual

Automobile Insurance Company ("State Farm") filed a Response (ECF No. 48) and the moving

Defendants filed a Reply (ECF No. 63); and (2) Defendant Bio-Magnetic's (Corrected) Motion to

_____

[1]  All Defendants join in this Motion.  ECF Nos. 25, 26, 28, 32 and 46.

Dismiss or Decline Jurisdiction Over Declaratory Judgment Claim (ECF No. 42).[2]  State Farm filed

a Response (ECF No. 49) and Bio-Magnetic filed a Reply (ECF No. 66).  The Court held a hearing

on November 18, 2014.  For the reasons that follow, the Court DENIES both motions.

**INTRODUCTION**

In this action, State Farm alleges a scheme carried out through the coordinated efforts of the

Defendants in submitting hundreds of fraudulent bills and false documentation to State Farm to

obtain payment for treatments and services that were either never performed or not medically

necessary.  In the two motions now before the Court, Defendants seek to dismiss Plaintiff's RICO

claims, 18 U.S.C. §§ 1962(c) and (d), under reverse preemption principles and to dismiss Plaintiff's

declaratory judgment claims.  For the reasons that follow, the Court DENIES both motions.

**I.      BACKGROUND**

State Farm's Complaint describes a multi-faceted scheme involving rehabilitation facilities,

prescribing clinics and physicians, and a diagnostic testing facility, all of whom are alleged to have

conspired to provide medically unnecessary treatment and to submit false and fraudulent

documentation to State Farm for the payment of No-Fault benefits to patients who were involved

in motor vehicle accidents and were thus eligible to obtain Personal Insurance Protection ("PIP")

Benefits under Michigan's No-Fault Act.  *See* Mich. Comp. Laws §§ 500.3105, 3107(1)(a).  State

Farm alleges that the scheme began as early as December, 2007, and claims to have paid over

$775,000 for various allegedly fraudulent treatments and tests and has refused to pay additional bills

that have been submitted by certain of the Defendants.

---

[2]  Defendants New Era Physical Therapy, New Era PT Services and Pointe Physical Therapy join
in this Motion.  ECF Nos. 25, 26.  Defendants Quiroga and Ruden also join in this Motion (ECF
Nos. 32 and 46) although State Farm has not filed Declaratory Judgment claims against them.

A.      **The Defendants and Their Alleged Role in the Scheme**

1.      **The "Management Group"**

The Complaint alleges that a "Management Group," comprised of Defendants Ram Gunabalan, Sherif El-Sayed, and Amale Bazzi secretly owned and/or controlled each of the other Defendants and maintained referral relationships with patients' personal injury attorneys, directed patients' treatments, coordinated patients' transportation to and from treatments through a commonly owned transportation service, referred patients to a commonly owned diagnostic testing facility and profited from all aspects of the scheme.  The Management Group is alleged to have had *quid pro quo* cross-referral relationships with personal injury attorneys who were motivated to send client-patients to facilities controlled by the Management Group because the facilities could be counted on to treat patients in a manner that inflated the value of patients' potential tort claims. ECF No. 1, Complaint ¶¶ 8, 10, 47-48, 52-54, 67-80, 164-66.  Additionally, the Complaint alleges, the Management Group directed the "Prescribing Clinics" and "Prescribing Physicians" (defined *infra*) to steer patients for medically unnecessary diagnostic tests to facilities owned and/or controlled by Defendant Gunabalan.  The charges for those tests were then billed to and paid for by State Farm. *Id*. ¶ 7, 28.

2.      **The "Treatment Facilities"**

Three "Treatment Facilities" are alleged to have participated in the scheme: (1) Pointe Physical Therapy, LLC ("Pointe"), a Michigan LLC located in Eastpointe, Michigan, which is alleged to have submitted fraudulent bills and documentation from some time in 2009 to November, 2013; (2) New Era Physical Therapy, P.C. ("New Era I"), a Michigan corporation with its principal place of business in Flint, Michigan, which is alleged to have submitted fraudulent bills and

3

documentation from December, 2007 through October, 2009; New Era PT Services, Inc. ("New Era II"), a Michigan corporation with its principal place of business in Flint, Michigan, which is alleged to have submitted fraudulent bills and documentation from 2010 through October, 2013. Compl. ¶¶ 158-60.  New Era I and New Era II are alleged to be alter egos of one another based upon unity of interest and ownership.  *Id.* ¶ 159.

The Treatment Facilities are alleged to be the center of the scheme. State Farm alleges that the bills and supporting documentation submitted by the Treatment Facilities were fraudulent because the services either were not performed or were performed pursuant to a fraudulent predetermined protocol that did not address the unique needs of individual patients.  *Id.* ¶¶ 2, 66. The Treatment Facilities are alleged to have provided the same physical therapy modalities to virtually every patient on almost every visit for as long as possible, regardless of the patient's unique conditions, needs and progress or lack of progress.  *Id.* ¶ 3.  State Farm alleges that in October or November, 2010, Pointe and New Era II began to employ an occupational therapist in addition to their physical therapists.  The addition of the occupational therapist, according to the Complaint, resulted in additional fraudulent and double billings. *Id.* ¶ 3-4.  Patients are alleged to have been referred to the Treatment Facilities by a cadre of personal injury attorneys and "investigators" who solicited patients who had been involved in automobile accidents and encouraged them to obtain treatment at the Treatment Facilities.  *Id.* ¶¶ 69-71.

### 3.    The "Prescribing Clinics"

Three "Prescribing Clinics," Michigan Visiting Physicians, P.C. d/b/a Choice House Call ("Choice"), Mundy Pain Clinic, P.C. ("Mundy") and Medical Evaluations, P.C. ("Medical Evaluations"), are alleged to have employed physicians who evaluated patients and provided

prescriptions for the medically unnecessary physical and occupational therapy that ultimately was provided by the Treatment Facilities. Patients, some of whom had been in minor automobile accidents, are alleged to have arrived at the Treatment Facilities "by the van-load." *Id.* ¶ 18. The Complaint alleges that the Management Group set up, owned and controlled the Prescribing Clinics, and hired the Defendant physicians and others to write prescriptions for medically unnecessary therapy that was to be provided at the Treatment Facilities. *Id.* ¶¶ 5-6.

### 4. The "Prescribing Physicians"

Five "Prescribing Physicians," Gunabalan, Martin Quiroga, D.O. ("Quiroga"), Andrew Ruden, M.D. ("Ruden"), James Beale, Jr., M.D. ("Beale") and Sean John Hoban, M.D. ("Hoban"), are alleged to have evaluated patients and written prescriptions for the allegedly medically unnecessary therapy provided by the Treatment Facilities. *Id.* ¶ 5. The Complaint alleges that because Michigan law requires a prescription from a physician for physical therapy treatment, the Management Group set up the Prescribing Clinics and hired the Prescribing Physicians, who are alleged to have written prescriptions according to a predetermined protocol that had no relation to the individual patient's needs or diagnoses. *Id.* ¶¶ 5, 81-82, 110-30. The Complaint alleges that the Prescribing Physicians examined patients and prescribed physical and/or occupational therapy to be obtained at the Treatment Facilities, and the Treatment Facilities continued to provide the same modalities on almost every visit for as long as possible to maximize the amounts billed to State Farm and to increase the value of the patients' personal injury claims for the benefit of a small group of personal injury attorneys with whom Defendants allegedly have substantial *quid pro quo* referral relationships. *Id.* ¶¶ 9, 79, 82. The Prescribing Physicians are also alleged to have written prescriptions for medically unnecessary Magnetic Resonance Imaging ("MRI") studies and directed

5

patients to have the studies performed at an MRI facility owned by Gunabalan. *Id*. ¶ 7.

### 5.    The "Diagnostic Testing Facility"

One MRI facility, Bio-Magnetic, which is alleged in the Complaint to be owned and controlled by Gunabalan, allegedly performed unnecessary Magnetic Resonance Imaging studies, "MRIs," on patients who were referred by the Prescribing Clinics and Prescribing Physicians. *Id*. ¶¶ 5, 131-32. The Complaint alleges that the MRIs were medically unnecessary and were part of the predetermined protocol applied to patients by the Prescribing Physicians and Prescribing Clinics. *Id*. ¶ 133-39. The MRI business is alleged to have been very lucrative, with the testing facility charging, for example, over $5,000 to perform an MRI on various regions of the spine. *Id*. ¶ 140.

### B.    Harm to State Farm

State Farm alleges that it justifiably relied on the bills, medical records and supporting documentation submitted by the Defendants, which represented that the Defendants were providing services that were actually and lawfully rendered and reimbursable when in fact the services were either not performed or performed pursuant to a generic predetermined protocol to enrich Defendants by maximizing their collection of the patients' No-Fault benefits. Compl. ¶ 149. State Farm claims that it was statutorily and contractually obligated to promptly pay for medically services that were lawfully rendered. *Id*. ¶ 150. In the case of Defendants' allegedly fraudulent charges, State Farm claims it has paid claims in excess of $775,000, and has been presented with additional fraudulent bills that it has refused to pay. *Id*. at 151-52.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to

dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id.* at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct

7

or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims (2) matters of which a court may take judicial notice (3) documents that are a matter of public record and (4) letters that constitute decisions of a government agency. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *See also Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claims could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

## III.   ANALYSIS

### A.   Plaintiff's RICO Claims Are Not Reverse Preempted Under McCarran-Ferguson

Defendants argue that State Farms RICO claims are reverse preempted by the McCarran-Ferguson Act, which provides that "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). The Act further declares that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of

regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance."  15 U.S.C. § 1012(b).

McCarran-Ferguson was enacted in 1945, reportedly out of congressional concern that the Supreme Court's decision in *United States v. South-Eastern Underwriters Ass'n.*, 322 U.S. 533 (1944), which held for the first time that an insurance company doing business across state lines was engaged in interstate commerce and subject to the Sherman Antitrust Act, "might undermine state efforts to regulate insurance . . . ." *Humana Inc. v. Forsyth*, 525 U.S. 299, 306-07 (1999).  "In § 2(b) of the Act . . . Congress ensured that federal statutes not identified in the Act or not [then] enacted would not automatically override state insurance regulation." *Id*. at 306.  If the federal statute sought to be applied specifically relates to the business of insurance, the federal law controls and the reverse preemption inquiry is at an end.  "[W]hen Congress enacts a law specifically relating to the business of insurance, that law controls." *Id*.  (Alteration added.)

If the federal law does not relate specifically to the business of insurance, and in this case the parties agree that RICO does not relate to the business of insurance, the following inquiries *each* must answered in the affirmative in order for McCarran-Ferguson to apply and for the federal law to be reverse preempted by state insurance law:

> Determining whether the reverse preemption rule applies requires us to answer three questions. First, we must decide "whether the federal statute at issue 'specifically relates to the business of insurance.'" *Genord [v. Blue Cross & Blue Shield of Mich.,]*, 440 F.3d [802] at 805 [(6th Cir. 2006)]. If it does, then the McCarran–Ferguson Act, by its own terms, does not permit reverse preemption. 15 U.S.C. § 1012(b) (establishing an exception to the reverse preemption rule where federal law "specifically relates to the business of insurance."). If it does not, then in order for the federal RICO statute to be reverse preempted by state law, *we must answer both remaining questions affirmatively* – "whether the state statute at issue was enacted . . . for the purpose of regulating the business of insurance" and "whether the application of the federal statute would invalidate, impair, or supersede the state statute." *Genord*, 440 F.3d at 805–06 (internal quotation marks omitted).

9

*Riverview Health Inst. LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 514 (6th Cir. 2010)
(alterations and emphasis added).

As the Sixth Circuit made clear in *Riverview*, if the federal statute does not specifically relate
to insurance, "both remaining questions [must be] answered affirmatively." *Id.* In this case, it is not
necessary to address the issue of whether the practice challenged here constitutes the business of
insurance because it is clear that application of RICO under the circumstances of this case does not
invalidate, impair or supersede Michigan state insurance laws. *Humana* compels this conclusion,
as does the reasoning of several factually similar cases, in this district and elsewhere, involving an
insurer's challenge to a provider's allegedly fraudulent billing scheme.

*Humana* involved an alleged scheme by a group health insurer to negotiate with hospitals
for discounts that the insurer did not pass along to its insureds. Nevada provided "both statutory and
common-law remedies to check insurance fraud." 525 U.S. at 311. Moreover, punitive damages
were available under Nevada law if a jury were to find clear and convincing evidence of fraud or
misrepresentation. *Id.* at 313. Insurers also were able to rely on the statutory fraud provisions when
they were the victims of fraud. *Id.* at 313. Finding that RICO could be applied "in harmony with
the State's regulation," the Court concluded:

> When federal law is applied in aid or enhancement of state regulation, and does not
> frustrate any declared state policy or disturb the State's administrative regime, the
> McCarran-Ferguson Act does not bar the federal action. . . . When federal law does
> not directly conflict with state regulation, and when application of the federal law
> would not frustrate any declared state policy or interfere with a State's administrative
> regime, the McCarran-Ferguson Act does not preclude its application.

*Humana*, 525 U.S. at 303, 313.

It is undisputed here that Michigan common law *does* provide a remedy for common law
insurance fraud that is separate and apart from remedies available under the Michigan Insurance

10

Code.  In *Cooper v. Auto Club Ins. Ass'n*, 481 Mich. 399 (2008), the Michigan Supreme Court noted that an insurance "fraud claim is clearly distinct from a no-fault claim."  *Id*. at 408.  The Court observed that a fraud claim (1) requires proof of elements in addition to a claim for payment of no-fault benefits, (2) accrues at a different time and (3) permits recovery of "a wide range of damages not available in a no-fault action."  *Id*. at 407.  *See also Paquette v. State Farm Mut. Auto. Ins. Co*., No. 279909, 2009 WL 2168918, at *3-4 (Mich. Ct. App. July 21, 2009) (relying on *Cooper* and rejecting "defendant's contention that a fraud claim may not be maintained where the underlying misconduct arises from a no-fault action").  This aspect of Michigan law clearly distinguishes this case from *Riverview*, on which Defendants principally rely, because the Ohio Supreme Court had expressly held that the Ohio insurance scheme "did not provide a private right of action," and that "a common law cause of action" for insurance fraud could not be implied under Ohio law.  *Riverview*, 601 F.3d at 517.  *In accord State Farm Mutual Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-11500, 2013 WL 509284, at *2 (E.D. Mich. Jan. 12, 2013) (noting that the "Michigan Supreme Court has recognized that a 'fraud claim is clearly distinct from a no-fault claim' and that a fraud claim may be brought against an insurer by an insured in the No-Fault context" and finding "no authority suggesting that insurers are without any remedy for insurance fraud") (quoting *Cooper, supra*).

Not only did the *Cooper* decision recognize that a common law action for fraud is available to supplement the Michigan Insurance Code, but also expressly held that the damages available in such a common law fraud action may far exceed those available under the No-Fault Act:  "[U]nder a fraud cause of action, [damages] may include . . . reasonable attorney fees, damages for emotional distress, and even exemplary damages."  *Cooper*, 481 Mich. at 409.  Again, *Riverview* is

11

distinguishable on this point because plaintiffs in *Riverview* were precluded under Ohio law from stating either a statutory claim or a common law fraud claim with its attendant remedies, and therefore given the Ohio insurance law scheme the "treble damages available under the federal RICO statute would greatly exceed the administrative remedies available under Ohio law." *Riverview*, 601 F.3d at 518.  By contrast, Michigan law allows a common law action for insurance fraud with its expansive remedies.  Under these circumstances, State Farm's RICO claims do not frustrate any state policies or interfere with Michigan's insurance scheme but enhance Michigan's interest in combating insurance fraud and are not reverse preempted under McCarran-Ferguson. *Humana* dictates this result.  *See also Brown v. Cassens Transport Co*., 546 F.3d 347, 362 (6th Cir. 2009) (observing that *Humana* compelled the conclusion that the treble damages available under RICO would not impair, invalidate or supersede the state worker's compensation scheme).

Defendants argue that "State Farm wrongly equates exemplary damages with punitive damages," and that the damages available under RICO are punitive in nature and would be precluded under Michigan law.  ECF No. 63, Resp. 7.  The Sixth Circuit, however, has suggested that "RICO is essentially compensatory in nature," and that "a treble-damages award under RICO is not punitive in nature . . . [but] remedial . . . designed to remedy economic injury . . . ."  *In re Classicstar Mare Lease Litigation*, 727 F.3d 473, 495 (6th Cir. 2013).  Thus, in contrast to the Ohio scheme at issue in *Riverview*, allowing State Farm's RICO claims to proceed in this case would not allow State Farm to recover damages which "greatly exceed," or are grossly different in character, than those that would be permitted under Michigan law.  Several courts are in agreement that a remedies differential does not compel the conclusion that claims should be reverse preempted.  *See Nationwide Ins. Co. v. Cisneros*, 52 F.3d 1351, 1363 (6th Cir. 1995), *cert. denied*, 516 U.S. 1140

(1996) (finding that the availability of private civil actions and unlimited punitive damages under the Fair Housing Act ("FHA") did not impair or supersede Ohio insurance law, which did not provide for such remedies, and concluding that McCarran-Ferguson did not preempt the regulation of insurance underwriting practices under the FHA); *Saunders v. Farmers Ins. Exchange*, 440 F.3d 940, 946 (8th Cir. 2006) ("*Humana* teaches that the mere fact of overlapping complementary remedies under federal and state law does not constitute impairment for McCarran–Ferguson Act purposes.") (citing *Nationwide*, 52 F.3d at 1363).

Two courts in this District have recently refused to find McCarran-Ferguson reverse preemption of RICO claims premised on facts nearly identical to those alleged here. In *State Farm Mutual Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-11500, 2013 WL 509284 (E.D. Mich. Jan. 12, 2013), Judge John Corbett O'Meara concluded that similar RICO claims by State Farm against a different group of health care providers were not reverse preempted under McCarran-Ferguson, distinguishing *Riverview* as involving a different statutory scheme that dictated exclusive statutory remedies for insurance fraud and concluding:

> In this case, State Farm does not have an "exclusive remedy" under the Michigan Insurance Code for fraud that would conflict with the application of RICO. Nor is there evidence that the application of RICO would impair Michigan's regulatory scheme. Although the code provides for criminal penalties for insurance fraud, there is no indication that Michigan intended to preclude a common law civil cause of action. The court finds that RICO complements and augments, rather than impairs, Michigan's regulatory scheme.

2013 WL 509284, at *4.

Similarly, in *State Farm Mutual Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. 14-10266, 2014 WL 5427170, at *8 (E.D. Mich. Oct. 24, 2014), Judge Judith Levy of this District reiterated Judge O'Meara's reasoning and held on similar facts that "the application of RICO would not

13

impair, invalidate or supersede Michigan's Insurance Code," given the availability of common law remedies for insurance fraud under Michigan law.[3]  *See also State Farm Mutual Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 224-25, 225 n. 5 (E.D.N.Y. 2009) (rejecting the argument that New York insurance law, which did not allow for treble damages or attorney fees, reverse preempted RICO claims premised on a similar fraudulent billing scheme allegations, finding no impairment of New York state law where the RICO claims supplemented the state scheme "'by providing another vehicle by which to carry forth the substantive policies' of the State of New York," and also finding it unnecessary to address the "business of insurance" inquiry having found no invalidation or impairment) (quoting *Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 515-21 (S.D.N.Y. 1997)).

This Court agrees that McCarran-Ferguson does not bar the RICO claims based on the allegations of a fraudulent No-Fault billing scheme in this case and concludes, as Judges O'Meara and Levy have done, that State Farm's RICO claims, premised upon an allegedly fraudulent No-Fault billing scheme, are not reverse preempted under McCarran-Ferguson.[4]

---

[3]  Relatedly, in *Allstate Ins. Co. v. Medical Evaluations, P.C.*, No. 13-14682 (E.D. Mich. 2013), Judge Matthew Leitman of this District has denied, on different grounds, motions to dismiss similar RICO claims filed by Allstate against certain health care providers, some of whom are also Defendants in this action.  Although Judge Leitman's opinion, *see Allstate Ins. Co. v. Medical Evaluations, P.C.*, No. 13-14682, 2014 WL 2559230 (E.D. Mich. June 6, 2014), does not discuss reverse preemption, the parties briefed the issue and by denying the motion to dismiss, Judge Leitman impliedly rejected a McCarran-Ferguson challenge to nearly identical RICO claims.

[4] Defendants also urge the Court to conclude that the clear statement principle applies here to bar the application of RICO to these facts.  But *Humana* has established that RICO may reach into the field of state insurance law where McCarran-Ferguson does not apply to bar its application.  To conclude that McCarran-Ferguson does not bar State Farm's RICO claims but conclude that nonetheless the clear statement principle standing alone compels the opposite conclusion would be an absurd result.  Defendants rely on the Sixth Circuit's discussion of the clear statement principle in *Jackson v. Sedgwick Claims Mgt. Servs., Inc.*, 731 F.3d 556 (6th Cir. 2013) (en banc), but it is

**B.      State Farm's Declaratory Judgment Claims Are Properly Before the Court**

Also before the Court is Defendant Bio-Magnetic's Motion to Dismiss or Decline Jurisdiction Over State Farm's Declaratory Judgment Claims (Counts V-VIII). (ECF No. 42.)[5] Bio-Magnetic argues that there is no independent basis of subject matter jurisdiction that allows this Court to exercise jurisdiction over State Farm's declaratory judgment claims against it and that, even if jurisdiction exists, this Court should exercise its discretion not to hear these claims.[6] Bio-Magnetic suggests that if the Court were to entertain the declaratory judgment claims, it would be interfering with various pending actions in state court that, according to Bio-Magnetic, address the same claims presented here, *i.e.* the validity of certain provider claims for reimbursement of No-Fault benefits.  State Farm responds first that Bio-Magnetic's jurisdiction argument is misguided, and second that Bio-Magnetic has failed to identify one pending state court litigation matter that addresses the same claims presented here and that no such individual claim could exist that would

---

clear that this was a supporting consideration, but not a decisive factor, in the court's ultimate conclusion in *Jackson* that plaintiffs in that case failed to demonstrate injury to business or property as required to sustain their RICO claim.  731 F.3d at 562-63.  Judge Leitman also commented in *Medical Evaluations*, *supra*, that the same federalism concerns that were present in *Jackson*, which involved the comprehensive state worker's compensation system, are not at the forefront here.  2014 WL 2559230, at *2 (noting that "the decision in Jackson was motivated, in part, by federalism concerns that are not present here (or at least not present to the same degree)").  Thus, Judge Leitman reasoned, allowing the RICO claims to proceed would not create the same type of "federal collateral review" of a comprehensive state administrative scheme that animated the discussion of the clear statement principle by the Sixth Circuit in *Jackson*.  *See Medical Evaluations*, 2014 WL 2559230, at *2.

[5] This motion is made by Bio-Magnetic but each of the other treatment facility Defendants against whom a declaratory judgment claim has been filed, *i.e.* Pointe and New Era I and II, have joined in the motion.  State Farm thus responded to the motion addressing the issue of the Court's jurisdiction over all four of its declaratory judgment counts.  *See* State Farm's Response, ECF No. 49, p. 5 n.2.

[6] Declaratory judgment claims also have been asserted in *Physiomatrix* (Judge O'Meara), *Universal Health* (Judge Levy) and *Medical Evaluations* (Judge Leitman), and have survived motions to dismiss without significant discussion of the issue in the court's opinions.

15

address the breadth of conduct at issue in this action.

State Farm's declaratory judgment counts against Bio-Magnetic and the Treatment Facilities assert that these entities are not entitled to reimbursement for any unpaid charges related to the allegedly fraudulent billing scheme. Compl. ¶¶ 209-10. Importantly, State Farm is seeking declaratory relief only with respect to "State Farm's obligation as to pending bills and does not seek a declaration that Bio-Magnetic and the Treatment Facilities cannot submit future bills." (ECF No. 49, State Farm's Resp. 22 n. 13.)

Bio-Magnetic first suggests that this Court lacks subject matter jurisdiction over these claims because if the parties' positions were reversed and Bio-Magnetic sued State Farm for recovery of unpaid No-Fault benefits, diversity jurisdiction would not exist because State Farm would be deemed to be a citizen of Michigan. Bio-Magnetic argues that Sixth Circuit precedent requires this Court to reverse the roles of the parties in order to determine whether or not independent grounds for jurisdiction exist over the declaratory judgment claims. Relying on *Severe Records, LLC v. Rich,* 658 F.3d 571, 580-81 (6th Cir. 2011), Bio-Magnetic argues that "the court must determine whether or not the cause of action anticipated by the declaratory judgment plaintiff arises under federal law." *Id.* at 580 (internal quotation marks and citation omitted). In other words, could Bio-Magnetic have sued State Farm in federal court to recover the unpaid allegedly fraudulent claims. Bio-Magnetic claims that it could not have done so because there would be no federal question, *i.e.* the claim would be one to recover No-Fault benefits under state law, and there would be no diversity of citizenship because State Farm would be considered a citizen of the State of Michigan in such a suit under 28 U.S.C. § 1332(c)(1),which states that "in any direct action against the insurer of a policy or contract of liability insurance . . . such insurer shall be deemed a citizen of . . . every State and

foreign state of which the insured is a citizen."  (ECF No. 42, Mot. at 8 n. 7.)

State Farm responds that Bio-Magnetic provides no authority for the proposition that if the roles were reversed in this case, *i.e.* if Bio-Magnetic were suing State Farm for recovery of No-Fault payments for services rendered to State Farm's insured, Bio-Magnetic would be filing a direct action of the type intended to be captured by § 1332(c)(1)'s mandate that State Farm be deemed a Michigan citizen.  The Court agrees that § 1332(c) targets a different type of action "where the plaintiff is suing the tortfeasor's insurer, rather than suing the tortfeasor directly, on the issue of liability." *Estate of Monahan v. Am. States Ins. Co.*, 75 F. App'x 340, 343 (6th Cir. 2003).  An action by Bio-Magnetic against State Farm for wrongful denial of claims would not be the typical case at which § 1332(c) is aimed, *i.e.* one that found its way to federal court because an injured party chose to sue the at-fault driver's out-of-state insurer rather than the in-state tortfeasor, simply to create diversity jurisdiction and obtain a federal forum.

In any event, putting the role-reversal controversy aside, State Farm argues that this Court has supplemental jurisdiction over the declaratory judgment claims based upon State Farm's RICO claims.  *See* 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").  In *Severe Records,* on which Bio-Magnetic so heavily relies, it was only after the Sixth Circuit dismissed plaintiff's federal copyright claim, the alternative "federal jurisdictional hook" to plaintiff's declaratory judgment claim, that the court proceeded with the role-reversal analysis on the declaratory judgment claim. 658 F.3d at 577.  Here, as Judge Levy recently noted in *Universal Health*, in this fraudulent billing

17

scheme action, "the declaratory judgment action is inextricably dependent on and connect[ed] to the underlying substantive counts," at least two of which arise under federal law.  2014 WL 5427170, at * 11.  Thus, the Court concludes that, at a minimum, it can at this stage of the proceedings assert supplemental jurisdiction over State Farm's declaratory judgment claims.

Next, Bio-Magnetic argues that State Farm's declaratory judgment claim against it does not present an actual controversy involving actual or imminent threat of injury.  "To determine whether a plaintiff has standing to adjudicate an "actual controversy," requisite for relief under the Declaratory Judgment Act, one must ask whether the parties have 'adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment' even though the injury-in-fact has not yet been completed."  *Nat'l Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997) (quoting *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)).  State Farm does not seek a declaratory judgment as to claims that have not yet been submitted but only as to claims that have been submitted and remain unpaid.  These unpaid claims are not hypothetical, they have been submitted for payment and State Farm seeks a declaration that they need not pay them because they were submitted as part of the alleged fraudulent billing scheme.  State Farm indicated at the hearing on this matter that it intends to prove that these unpaid claims are fraudulent by demonstrating a pervasive pattern by which these claims have been submitted over a long period of time.  In fact, State Farm suggests, this Court is the only appropriate forum for these claims because when litigated individually at the state court level, the relevant pattern of fraudulent behavior cannot be examined.  Based on the facts alleged in State Farm's Complaint, which are accepted as true at this pleading stage, State Farm's declaratory judgment counts for claims that have been submitted but remain unpaid present "adverse legal interests of sufficient immediacy" to support a claim for declaratory

18

relief.  State Farm should not be forced to pay these already-submitted claims, *i.e.* actually incur the injury-in-fact, before obtaining a declaration of its right not to pay them.  On similar claims, courts have allowed declaratory judgment claims to proceed.  *See State Farm Mut. Auto Ins. Co. v. Physicians Injury Care Center, Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011), *rev'd on other grounds*, 563 F. App'x 665 (11th Cir. 2014) (holding that district court did not err in failing to dismiss insurer's declaratory judgment claim against health care provider who obtained no fault benefits through a fraudulent course of treatment); *Grafman*, 655 F. Supp. 2d at 223 (request for declaratory relief as to submitted but unpaid claims for payment of medical services provided by a fraudulently incorporated health care provider "sufficiently alleged . . . a substantial controversy concerning whether plaintiff is required to make payment to [] satisfy invoices which plaintiff contends were fraudulent"); *State Farm Mut. Auto. Ins. Co. v. Kalika*, No. 04-4631, 2006 WL 6176152, at *18-19 (E.D.N.Y. March 16, 2006)  (finding that a claim for a declaratory judgment alleging that State Farm had no obligation to pay claims for tests performed on individual insureds that were not medically necessary under the circumstances of each individual case "satisfied the pleading requirements necessary to survive a motion to dismiss the claim for declaratory relief").  The Court concludes that State Farm has sufficiently alleged a substantial controversy.

Finally, Bio-Magnetic argues that, even assuming the Court concludes that State Farm has standing to assert the declaratory judgment counts, this Court should abstain from hearing State Farm's declaratory judgment claims under abstention doctrines enunciated in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) (generally holding that where a suit is pending in state court presenting identical issues governed by state law, a federal court ought to abstain from entering declaratory relief) and *Wilton v. Seven Falls Co*., 515 U.S. 277 (1995) (holding that the standard for

19

determining whether to exercise such discretion to abstain is highly discretionary).

State Farm first responds that where, as here, the complaint seeks both declaratory relief and money damages and other relief through RICO, common-law fraud and unjust enrichment, judicial economy counsels against dismissing the declaratory judgment claims. *See Adrian Energy Assoc. v. Michigan Pub. Serv. Comm'n*, 481 F.3d 414, 422 (6th Cir. 2007) ("When a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court must address, then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources. The claims in this case for which declaratory relief is requested and those for which injunctive relief is requested are so closely intertwined that judicial economy counsels against dismissing the claims for declaratory judgment relief while adjudicating the claims for injunctive relief."); *State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, LLC*, 9 F. Supp. 3d 1303, 1308-09 (M.D. Fla. 2014) (denying motion for *Wilton* abstention where complaint contained stand-alone damage claims in addition to claims for declaratory relief); *State Farm Mut. Auto. Ins. Co. v. Schepp*, 616 F. Supp. 2d 340, 347 (E.D.N.Y. 2008) ("*Brillhart/Wilton* abstention, which only applies to declaratory judgment actions, also merits little discussion: it does not apply because plaintiffs seek, in addition to declaratory relief, damages based on theories of fraud and unjust enrichment."); *CBL & Assoc. Mgt., Inc. v. Lumbermens Mut. Cas. Co.*, No. 05-210, 2006 WL 2087625, at *4 (E.D. Tenn. July 25, 2006) ("[W]hen other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief.") (internal quotation marks and citation omitted) (alteration in original); *Allstate Ins. Co. v. Smirnov*,

20

No. 12-1246, 2013 WL 5407224, at *8 n.6 (E.D.N.Y. Aug. 21, 2013) (Gold, M.J.) (suggesting that

"*Wilton/Brillhar[t]* abstention does not apply where . . . the plaintiff seeks damages and declaratory

relief, as opposed to declaratory relief alone") (alteration added).

Even assuming that *Wilton/Brillhart* does apply, were the Court to consider exercising its

discretion not to hear the declaratory judgment claims, the factors it must consider would lead to the

conclusion that abstention is not appropriate here.  The Sixth Circuit recently revisited the factors

that should guide a district court in determining whether to exercise discretion over a declaratory

judgment action:

> The factors, often called the *Grand Trunk* factors after the case that brought the list into being in this circuit, are:
>
> (1) Whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; [which is determined by asking]
>> a. whether the underlying factual issues are important to an informed resolution of the case;
>> b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>> c. whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and
> (5) whether there is an alternative remedy which is better or more effective.

*Western World Ins. Co. v. Hoey*, __F.3d__, 2014 WL 6865300, at *2 (6th Cir. Dec. 8, 2014)

(quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) quoting *Grand Trunk W.*

*R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) and *Bituminous Cas. Corp. v. J*

*& L Lumber Co.*, 373 F.3d 807, 814-15 (6th Cir. 2004)).  Considered holistically, "the *Grand Trunk*

factors . . . direct the district court to consider three things: efficiency, fairness, and federalism." *Hoey*, 2014 WL 6865300, at *2.

Bio-Magnetic stresses federalism concerns here, urging the Court to defer to existing state court litigation, but has failed to identify or attach the pleadings from a single actual pending state court litigation that raises the same issues raised here, *i.e.* that Bio-Magnetic played a role in an alleged fraudulent predetermined protocol that was applied to hundreds of patients. State Farm suggests that there is no evidence before this Court that any state court faced with a determination of a single No-Fault claim for the treatment of a single patient has or ever will have before it the breadth of claims presented in this action, *i.e.* that a fraudulent predetermined protocol was applied across hundreds of patients in a coordinated scheme to defraud State Farm. If any pending state court cases are ultimately adjudicated to have been for medically necessary services, those claims, if they were included in State Farm's declaratory judgment claim, presumably will drop out of this case.

Bio-Magnetic urges the Court to consider the Report and Recommendation issued in *State Farm Mut. Auto. Ins. Co. v. Goldstein*, No. 03-cv-1645 (M.D. Fla. July 15, 2004), attached to Defendants' Motion to Dismiss Pursuant McCarran-Ferguson as Exhibit 1 (ECF No. 48-1), in which the magistrate judge did recommend that the court abstain under *Wilton* because the defendants submitted the pleadings from an actual pending state court proceeding in which the very claims at issue were under consideration and therefore it appeared to the magistrate judge that "the issues presented in the declaratory judgment claim can be fully resolved in connection with the defendants' [pending state law action] for payment of the claim." No such evidence has been presented as to the hundreds, or for that matter as to any, of the claims allegedly at issue here.

State Farm argues that its obligations with respect to pending bills submitted by Bio-Magnetic and the Treatment Facilities will be resolved with a single finding that the bills and related documents were fraudulent because they reflected and were submitted pursuant to an alleged predetermined protocol that disregarded individual patient needs. (ECF No. 49, State Farm's Resp. 22.) State Farm asserts that it intends to prove that these unpaid claims are fraudulent by demonstrating an allegedly illegal pattern by which these claims have been submitted over a long period of time. While Bio-Magnetic argues that State Farm's RICO claims present an unprecedented and "novel theory," the Court is not called upon to, and does not, consider the ultimate viability of these claims for purposes of analyzing the *Grand Trunk* factors.

Assuming that *Wilton* abstention is even appropriately considered in an action such as this that seeks both declaratory and other forms of relief, consideration of the *Grand Trunk* factors weighs in favor of exercising discretion over the declaratory judgment claims here. No single state law claim could provide the relief sought in State Farm's Complaint. Thus, there is not an alternative remedy which is better (factor 5), the declaratory judgment action would settle the claims for unpaid bills (factor 1), the declaratory judgment action would clarify the legal relations by determining the fraudulent nature of the billings (factor 2), State Farm is not racing Bio-Magnetic for a *res judicata* ruling on the unpaid claims and has suggested that pending state court adjudications favorable to Bio-Magnetic rendered in the interim will drop out of this case (factor 3) and, as discussed *supra*, federalism concerns do not support abstaining in this action where actions for fraud lie outside the No-Fault scheme under Michigan law (factor 4). Considerations of "efficiency, fairness and federalism" weigh in favor of exercising jurisdiction over State Farm's declaratory judgment claims. *Hoey*, 2014 WL 6865300, at *2.

**IV.   CONCLUSION**

For the foregoing reasons, the Court DENIES the Defendants' Motion to Dismiss Pursuant to McCarran-Ferguson and DENIES Bio-Magnetic's Motion to Dismiss or Decline Jurisdiction Over Declaratory Judgment Claims.

IT IS SO ORDERED.


s/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  December 18, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 18, 2014.


s/Deborah Tofil_____
Case Manager