UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                    Plaintiff,                          Case No. 14-cv-11700

                                                        Paul D. Borman
v.                                                      United States District Judge

POINTE PHYSICAL THERAPY, LLC,
et al.,

                    Defendants.
_____/

OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS
(ECF NOS. 20, 21, 23, 25, 32, and 46) and DENYING DEFENDANTS'
MOTION TO STRIKE (ECF NO. 22)

This matter is before the Court on Defendants' Motions to Dismiss (ECF Nos. 20, 21, 23, 25, 32, 46) and Defendants' Motion to Strike (ECF No. 22). Plaintiff State Farm Mutual Automobile Company ("State Farm") filed responses and Defendants filed, in most instances, replies. The Court held hearings on April 17 and April 23, 2015. For the reasons that follow, the Court DENIES the motions to dismiss and DENIES the motion to strike.

**INTRODUCTION**

In this action, State Farm seeks to recover money it alleges was fraudulently obtained through the coordinated efforts of the Defendants in submitting hundreds of bills and false documentation to obtain payment of benefits under Michigan's No-Fault Act for treatments and services that were either never performed or not medically necessary. In these motions, Defendants

1

move to dismiss Plaintiff's Complaint on a number of theories and move to strike certain allegations of the Complaint.

## I.      BACKGROUND

State Farm's Complaint describes a multi-faceted scheme involving rehabilitation facilities, prescribing clinics and physicians, and a diagnostic testing facility, all of whom are alleged to have conspired to provide medically unnecessary treatment and to submit false and fraudulent documentation to State Farm for the payment of No-Fault benefits for patients who were involved in motor vehicle accidents and were thus eligible to obtain Personal Insurance Protection ("PIP") Benefits under Michigan's No-Fault Act. *See* Mich. Comp. Laws §§ 500.3105, 3107(1)(a). State Farm alleges that the scheme began as early as December, 2007, and claims to have paid over $775,000 for various allegedly fraudulent treatments and tests and has refused to pay additional bills that have been submitted by certain of the Defendants. Plaintiffs' Complaint asserts causes of action for common law fraud, unjust enrichment and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d) against all Defendants and seeks declaratory relief against the Treatment Facilities (defined *infra*) and Defendant Bio-Magnetic Resonance, Inc.

### A.      The Defendants and Their Alleged Role in the Scheme

### 1.      The Management Group

The Complaint alleges that a "Management Group," comprised of Defendants Dr. Ram Gunabalan, Sherif El-Sayed, and Amale Bazzi secretly owned and/or controlled each of the other Defendants and maintained referral relationships with patients' personal injury attorneys, directed patients' treatments, coordinated patients' transportation to and from treatments through a

commonly owned transportation service, referred patients to a commonly owned diagnostic testing facility and profited from all aspects of the scheme.  The Management Group is alleged to have had *quid pro quo* cross-referral relationships with personal injury attorneys who were motivated to send client-patients to facilities controlled by the Management Group because Defendants referred patients to them, and their facilities could be counted on to treat patients in a manner that inflated the value of their potential tort claims. Compl. ¶¶ 8, 10, 47-48, 52-54, 67-80, 164-66.  Additionally, the Complaint alleges, the Management Group directed the Prescribing Clinics and Prescribing Physicians to steer patients for medically unnecessary diagnostic tests to facilities owned and/or controlled by Gunabalan which were then billed to and paid for by State Farm.  *Id.* ¶ 7, 28.

### 2.    The Treatment Facilities

Three Treatment Facilities are alleged to have participated in the scheme: (1) Pointe Physical Therapy, LLC ("Pointe"), a Michigan LLC located in Eastpointe, Michigan, which is alleged to have submitted fraudulent bills and documentation from 2009 to November, 2013; (2) New Era Physical Therapy, P.C. ("New Era I"), a Michigan corporation with its principal place of business in Flint, Michigan, which is alleged to have submitted fraudulent bills and documentation from December, 2007 through October, 2009; New Era PT Services, Inc. ("New Era II"), a Michigan corporation with its principal place of business in Flint, Michigan, which is alleged to have submitted fraudulent bills and documentation from 2010 through October, 2013. Compl. ¶¶ 158-60.  New Era I and New Era II are alleged to be alter egos of one another based upon unity of interest and ownership.  *Id.* ¶ 159.   The Treatment Facilities are alleged to be the center of the scheme. State Farm alleges that the bills and supporting documentation submitted by the Treatment Facilities were fraudulent because the services either were not performed or were performed pursuant to a fraudulent

predetermined protocol that did not address the unique needs of individual patients. *Id.* ¶¶ 2, 66. The Treatment Facilities are alleged to have provided the same physical therapy modalities to virtually every patient on almost every visit for as long as possible, regardless of the patient's unique conditions, needs and progress or lack of progress. *Id.* ¶ 3. State Farm alleges that in October or November, 2010, Pointe and New Era began to employ an occupational therapist in addition to their physical therapists. The addition of the occupational therapist, according to the Complaint, resulted in additional fraudulent and double billings. *Id.* ¶ 3-4. Patients are alleged to have arrived at the Treatment Facilities "by the van-load," some of whom had been in minor automobile accidents. *Id.* ¶ 18. Patients are alleged to have been referred to the Treatment Facilities by a cadre of personal injury attorneys and "investigators" who solicited patients who had been involved in automobile accidents and encouraged them to obtain treatment at the Treatment Facilities. *Id.* ¶¶ 69-71.

### 3. The Prescribing Clinics

Three Prescribing Clinics, Michigan Visiting Physicians, P.C. d/b/a Choice House Call ("Choice"), Mundy Pain Clinic, P.C. ("Mundy") and Medical Evaluations, P.C. ("Medical Evaluations"), are alleged to have employed physicians who evaluated patients and provided prescriptions for the medically unnecessary physical and occupational therapy that was ultimately provided by the Treatment Facilities. The Complaint alleges that the Management Group set up, owned and controlled the Prescribing Clinics, and hired the Defendant physicians and others to write prescriptions for medically unnecessary therapy that was to be provided at the Treatment Facilities. *Id.* ¶¶ 5-6.

### 4. The Prescribing Physicians

Five Prescribing Physicians, Ram Gunabalan, M.D. ("Gunabalan"), Martin Quiroga, D.O.

("Quiroga"), Andrew Ruden, M.D. ("Ruden"), James Beale, Jr., M.D. ("Beale") and Sean John Hoban, M.D. ("Hoban"), are alleged to have evaluated patients and written prescriptions for the medically unnecessary therapy provided by the Treatment Facilities. *Id.* ¶ 5. The Complaint alleges that because Michigan law requires a prescription from a physician for physical therapy treatment, the Management Group set up the Prescribing Clinics and hired the Prescribing Physicians, who are alleged to have written prescriptions according to a predetermined protocol that had no relation to the individual patient's needs or diagnoses. *Id.* ¶¶ 5, 81-82, 110-30. The Complaint alleges that the Prescribing Physicians examine patients and prescribe physical and/or occupational therapy to be obtained at the Treatment Facilities, and the Treatment Facilities continue to provide the same modalities on almost every visit for as long as possible to maximize the amounts that can be billed to State Farm and to increase the value of the patients' personal injury claims for the benefit of a small group of personal injury attorneys with whom Defendants have substantial *quid pro quo* referral relationships. *Id.* ¶¶ 9, 79, 82. The Prescribing Physicians are also alleged to have written prescriptions for medically unnecessary Magnetic Resonance Imaging ("MRI") studies and directed patients to have the studies performed at an MRI facility owned by Gunabalan. *Id.* ¶ 7.

     **5.**     **The Diagnostic Testing Facility**

     One MRI facility, Bio-Magnetic Resonance, Inc. ("Bio-Magnetic"), which is alleged in the Complaint to be owned and controlled by Gunabalan, performed unnecessary MRIs on patients who were referred by the Prescribing Clinics and Prescribing Physicians. *Id.* ¶¶ 5, 131-32. The Complaint alleges that the MRIs were medically unnecessary and were part of the predetermined protocol applied to patients by the Prescribing Physicians and Prescribing Clinics. *Id.* ¶ 133-39. The performance of MRIs is alleged to have been very lucrative, the testing facility charging over

$5,000 to perform an MRI on regions of the spine. *Id*. ¶ 140.

### B. Harm to State Farm

State Farm alleges that it justifiably relied on the bills, medical records and supporting documentation submitted by the Defendants, which represented that the Defendants were providing services that were actually and lawfully rendered and reimbursable when in fact the services were either not performed or performed pursuant to a generic predetermined protocol to enrich Defendants by maximizing their collection of the patients' No-Fault benefits. ECF No. 1, Complaint ¶ 149. State Farm claims that it was statutorily and contractually obligated to promptly pay for medically services that were lawfully rendered. *Id*. ¶ 150. In the case of Defendants' allegedly fraudulent charges, State Farm claims it has paid claims in excess of $775,000, and has been presented with additional fraudulent bills that it has refused to pay. *Id*. at 151-52.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at

555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient

factual allegations that make the asserted claim plausible on its face. *Id.* at 570. The Supreme Court

clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter,
> accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic
> Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility
> when the plaintiff pleads factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The
> plausibility standard is not akin to a "probability requirement," but it asks for more
> than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a
> complaint pleads facts that are "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and plausibility of 'entitlement to relief.'"
> *Id.*, at 557 (brackets omitted).

*Id.* at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create

speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to

relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing

*Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct

or inferential allegations respecting all the material elements to sustain recovery under some viable

legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1)

documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims (2)

matters of which a court may take judicial notice (3) documents that are a matter of public record

and (4) letters that constitute decisions of a government agency. *Tellabs, Inc. v. Makor Issues &*

*Rights, Ltd.*, 551 U.S. 308, 322 (2007). *See also Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d

507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred

to in the complaint and central to the claim are deemed to form a part of the pleadings).  Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings.  *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003).  "Otherwise, a plaintiff with a legally deficient claims could survive a motion to dismiss simply by failing to attach a dispositive document."  *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

## III.    ANALYSIS

### A.    Motion to Dismiss RICO Claims for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) and 9(b) by Gunabalan, Michigan Visiting Physicians, Mundy and Bio-Magnetic (ECF No. 20)

In this action, in addition to claims of common law fraud, unjust enrichment and claims for declaratory relief, State Farm alleges claims under RICO, 18 U.S.C. §§ 1962(c) and (d). Those sections provide:

> (c)  It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c), (d).  To establish a violation of this section of the RICO statute, plaintiff must establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  "Racketeering activity consists of acts which are indictable under a number of federal statutes listed in 18 U.S.C. § 1961(1)(B)." *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 404 (6th Cir. 2012).  Included among the

8

indictable offenses that satisfy the "predicate act" requirement is mail fraud, 18 U.S.C. §§ 1341, 1343, which Plaintiff relies on in this case to establish the alleged racketeering activity.  To prove mail fraud, Plaintiff must demonstrate (1) "a scheme to defraud," (2) "use of the mails in furtherance of the scheme," and (3) "scienter . . . which is satisfied by showing the defendant acted either with a specific intent to defraud or with recklessness . . . ."  *Heinrich*, 668 F.3d at 404.  State Farm alleges that the Defendants, using the mails to submit hundreds of fraudulent claims and documentation pursuant to a coordinated scheme to defraud State Farm, committed the predicate acts of mail fraud knowing their submissions were false and/or fraudulent.

Gunabalan, Michigan Visiting Physicians, Mundy and Bio Magnetic move to dismiss State Farm's § 1962(c) RICO claim (Count II) for failure to state a claim arguing that: (1) the Sixth Circuit's decision in *Jackson v. Sedgwick Claims Mgt. Servs., Inc.*, 731 F.3d 556 (6th Cir. 2013) (en banc), *cert. denied*, 134 S.Ct. 2133 (2014), bars recovery under RICO in this action; (2) State Farm fails to plausibly plead an enterprise; (3) State Farm fails to plausibly plead the distinct conduct of the Defendants; (4) State Farm fails to plead mail fraud with particularity; and (5) State Farm's § 1962(d) conspiracy claim (Count III) fails for these same reason.[1]

### 1.     *Jackson* does not bar recovery under RICO in this action.

Defendants argue that State Farm's RICO claims are barred by the Sixth Circuit's decision in *Jackson* because State Farm fails to allege an "injury to business or property."  *Jackson* involved the claims of a purported class of former employees of Coca Cola who were denied workers'

---

[1]  Also joining in this motion are:  Pointe Physical Therapy (ECF No. 26); New Era Physical Therapy, New Era PT Services, El-Sayed, Bazzi, Medical Evaluations, Beale and Hoban (ECF No. 28); Quiroga (ECF No. 32); Ruden (ECF No. 46).  The Court's disposition of the principal motion also resolves all parties' joinders in this motion.

compensation benefits for injuries suffered while employed by Coca Cola.  Plaintiffs in *Jackson* alleged that Sedgwick (Coca Cola's third-party benefits claims administrator) retained certain "cut-off" doctors who examined Plaintiffs and, pursuant to a fraudulent scheme orchestrated by Coca Cola and Sedgwick that utilized the mails, falsely reported to Sedgwick that Plaintiffs did not suffer from a work related disability so that Sedgwick could deny or cease the payment of workers' compensation benefit.  731 F.3d at 561.  The Sixth Circuit, concluding that Plaintiffs' claims, which sought payment of benefits related to their injuries, were plainly derivative of the personal injuries they suffered, held that Plaintiffs failed to allege "injury to business or property" as that phrase is understood for purposes of RICO:

> Courts interpreting RICO have remained faithful to this distinction by excluding damages "arising directly out of" a personal injury, even though personal injuries often lead to monetary damages that would be sufficient to establish standing if the plaintiff alleged a non-personal injury. The reason why these expenses do not constitute an injury to property is because a personal injury does not lead to "a proprietary type of damage."  Although courts have used various terms to describe the distinction between non-redressable personal injury and redressable injury to property, the concept is clear: both personal injuries and pecuniary losses flowing from those personal injuries fail to confer relief under § 1964(c).

731 F.3d at 565-66 (internal quotation marks and citations omitted).  Finding that "the losses [Plaintiffs] allege are simply a shortcoming in the compensation they believed they were entitled to receive for a personal injury," the Sixth Circuit concluded that such losses "do[] not constitute an injury to 'business or property' under RICO."  *Id*. at 567.

By contrast, State Farm's alleged injury derives not from personal injury but from business transactions that resulted in a proprietary loss, *i.e.* the submission to it, and its payment of, allegedly fraudulent claims.  The Supreme Court has recognized that in general "[w]hen a commercial enterprise suffers a loss of money it suffers an injury to both its 'business' and its 'property.'"

*Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979).  As recognized by several courts around the country and in this district, resolving this same challenge on indistinguishable facts, the type of injury alleged by State Farm satisfies the RICO "business or property" injury requirement.  *See State Farm Mutual Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. 14-10266, 2014 WL 5427170, at *8 (E.D. Mich. Oct. 24, 2014) ("*Jackson* does not bar a corporation that sells insurance covering personal injury claims from bringing a RICO suit, because the injuries alleged in relation to an enterprise seeking fraudulent reimbursements for services performed are to the business or property of the corporation."); *Allstate Ins. Co. v. Medical Evaluations, P.C.*, No. 13-14682, 2014 WL 2559230, at *1 (E.D. Mich. June 6, 2014) ("Unlike the employee-plaintiffs in *Jackson*, Allstate is not seeking to recover for personal injuries in this action. . . . Allstate is seeking to recover for alleged injuries to both its property and its business—injuries that arose when the Defendants allegedly fraudulently induced Allstate to pay large volumes of dishonest claims.");  *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-11500, 2014 WL 555199, at *2 (E.D. Mich. Feb. 12, 2014) (distinguishing *Jackson* and finding that "State Farm's injuries arise from the payment of allegedly fraudulent claims submitted by the Clinics . . . an injury [that] is clearly not "personal" and is an injury to State Farm's "business or property.") (citing *Reiter*, 442 U.S. at 339) (alteration added);  *State Farm Mut. Auto. Ins. Co. v. Kugler*, No. 11-80051, 2011 WL 4389915, at * 10 (S.D. Fla. Sept. 21, 2011) ("Because State Farm alleges it was the direct target and recipient of fraudulent bills and related medical documentation submitted by defendants in connection with unnecessary diagnostic tests and medical procedures allegedly performed by defendants throughout [the] course of the fraudulent scheme alleged in the complaint, and that it was injured in its business or property when it paid first and third party insurance claims on behalf of its insureds in reliance on those bills

and reports, the court finds the allegation of a cognizable economic injury which supports its standing to sue under RICO.") (alteration added).

2.      **State Farm plausibly pleads an association-in-fact enterprise.**

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity  or collection of unlawful debt." 18 U.S.C. § 1962(c).  "The statute does not specifically define the outer boundaries of the "enterprise" concept but states that the term 'includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.' § 1961(4).  This enumeration of included enterprises is obviously broad, encompassing 'any . . . group of individuals associated in fact.' *Ibid*." *Boyle v. United States*, 556 U.S. 938, 944 (2009) (footnote omitted). "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id*. at 946 (alteration added).

In attacking the Complaint for failure to adequately plead the purpose of the enterprise, Defendants ignore several allegations of the Complaint, which of course the Court must accept as true at this pleading stage.  The Complaint alleges that the association-in-fact enterprise shared the common purpose of submitting false claims to State Farm (Compl. ¶ 181) and further alleges facts supporting the claim that the Defendants worked together, through referrals and utilization of common billing services and forms, (Compl. ¶¶ 13-43, 72-79) to achieve that purpose.  Defendants insist that such coordination of effort would have been against each of the Defendants' self-interest,

but of course this introduces facts outside those pleaded in the Complaint, matters that are not properly considered at this pleading stage. The Complaint alleges in some detail the roles of each of the Defendants in the RICO scheme to defraud: the Management Group controlled the other Defendants, directing the Prescribing Clinics and Prescribing Physicians to steer patients to facilities owned or controlled by them for unnecessary diagnostic tests; the Prescribing Clinics and Prescribing Physicians evaluated patients and provided prescriptions for the medically unnecessary physical therapy that was ultimately provided by the Treatment Facilities, and the Treatment Facilities, central to the scheme, provided the unnecessary therapy and submitted the fraudulent bills and documentation to State Farm for payment. The interrelationship of the entities is adequately alleged and their respective roles in making the enterprise function adequately described.

As other Judges in this district have recognized when analyzing substantially similar pleadings, such allegations are sufficient to plead an association-in-fact enterprise:

> State Farm has sufficiently alleged the existence of an enterprise and that Dr. Abu Farha participated in it. State Farm alleged (1) the purpose of the enterprise (the submission of fraudulent claims); (2) the relationships between those associated with the enterprise (the doctors, physical therapy clinics, and the personal injury attorneys with whom they had quid pro quo cross-referral relationships); and (3) sufficient longevity to permit the enterprise's purpose (from October 2007 to the present).

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-1150, 2013 WL 509284, at *5 (E.D. Mich. Feb. 12, 2013). *In accord Universal Health*, 2014 WL 5427170, at * 4 (finding that State Farm successfully pled an association-in-fact enterprise through allegations delineating the "specific roles and relationships of the defendants," alleging "an ongoing enterprise since at least 2007," and alleging "that it functioned for the common purpose of submitting fraudulent bills for reimbursement"). *See also Kugler*, 2011 WL 4389915, at *6 (finding that State Farm's complaint plausibly alleged an association-in-fact enterprise where it described the "interrelationships between

each set of defendants and their respective roles in the scheme," and also demonstrated how the enterprise functioned with "sufficient longevity to permit its members to pursue the illicit purpose of the enterprise"); *Empire Title Servs., Inc. v. Fifth Third Mortg. Co.*, No. 10-2208, 2013 WL 1337629, at *6 (N.D. Ohio March 29, 2013) (noting that an association-in-fact can exist even though the membership of the enterprise may fluctuate and the participants may vary). The Court concludes that the Complaint adequately alleges an association-in-fact enterprise.

> **3.      The Complaint plausibly alleges that the Defendants conducted the affairs of the enterprise.**

RICO requires Plaintiffs to prove that the Defendants "conducted the affairs of the enterprise" through the pattern of racketeering activity. The Supreme Court defined the contours of this requirement in *Reves v. Ernst & Young*, 507 U.S. 170, 179  (1993), holding that "[i]n order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." The Sixth Circuit made clear in *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008), that *Reves* does not require proof that the defendant had a "managing" role in the enterprise. It is sufficient under *Reves* to allege that a defendant had some part in directing the affairs of the enterprise "either by making decisions on behalf of the enterprise or by knowingly carrying them out." 535 F.3d at 418.

At this pleading stage, State Farm is required only to plausibly allege that each Defendant "knowingly carried out" their part in the alleged scheme. It is clearly alleged in the Complaint how each Defendant's role is integral to the operation of the fraudulent payment submission scheme as a whole. The common control by Gunabalan and the Management Group of the Prescribing Clinics and Treatment Facilities is clearly alleged, as are the details of each entity's role in conducting illegitimate examinations, filling out fraudulent disability certificates, ordering and carrying out

medically unnecessary diagnostic tests.  Without the Management Group directing the Defendants through common ownership and control and providing important referrals on which the other Defendants relied, and without the Prescribing Clinics engaging the Prescribing Physicians to write the orders for the medically unnecessary services, ultimately provided by the Treatment Facilities who could not provide the services without orders from the Prescribing Clinics and Physicians, and without the role of the Treatment Facilities in finally submitting the false documentation and bills, the goals of the enterprise could not be achieved.  As stated in the Complaint:

> ¶ 180.   Pointe, New Era I, New Era II, Choice, Mundy, Medical Evaluations, Gunabalan, Quiroga, Ruden, Beale, Hoban, El-Sayed, Bazzi, and Bio-Magnetic formed an association-in-fact "enterprise" (the "Treatment Enterprise") as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce.

> ¶ 181.   The members of the Treatment Enterprise are and have been joined in a common purpose, have relationships with and among each other, and have associated through time sufficient to permit those associated to pursue the enterprise's purpose. Pointe, New Era I, New Era II, Choice, Mundy, Medical Evaluations, Gunabalan, Quiroga, Ruden, Beale, Hoban, El-Sayed, Bazzi, and Bio-Magnetic forged symbiotic relationships and needed and depended upon the participation of the others to accomplish their common purpose of defrauding State Farm through fraudulent personal injury claims. Specifically, the Treatment Facilities, Pointe, New Era I and New Era II, profited by billing State Farm for the physical therapy and occupational therapy but depend on prescriptions issued by the Prescribing Clinics and the Prescribing Physicians. The Prescribing Clinics and Prescribing Physicians profit by fraudulently billing State Farm directly for each instance in which they purportedly examine patients who they treat and benefit when the Treatment Facilities refer the patients back to them for continuing treatment and re-diagnosis. The Management Group participates in each of these activities, own and/or control the Treatment Facilities and the Prescribing Clinics, profit from the treatment provided at the Treatment Facilities and the Prescribing Clinics, and funnel patients into treatment at the Treatment Facilities. Additionally, Gunabalan himself purports to treat patients, prescribe therapy and other medical services. The MRI Facility profited by billing State Farm for medically unnecessary MRI tests performed on patients of the Treatment Facilities and depend on prescriptions issued by the Prescribing Clinics and the Prescribing Physicians. The participation and role of each of the Defendants was necessary to the success of the scheme. Neither Pointe, New Era I, New Era II, Choice, Mundy, Medical Evaluations, Gunabalan, Quiroga, Ruden, Beale, Hoban,

15

El-Sayed, Bazzi, nor Bio-Magnetic was capable of carrying out the scheme without the participation of the others.

This is not "group pleading" as Defendants suggest.  Discreet paragraphs of the Complaint further delineate exactly the offending conduct of each individual Defendant.  *See, e.g.* ¶¶ 6-7, 13-27, 49-55, 67-80, 74-79, 81-142, 161-66, 167-71.  Each of the Defendants is on fair notice of what it is they are alleged to have done for their part in carrying out the alleged fraudulent scheme to obtain payment for medically unnecessary services and tests.  Their claims that they were just carrying on their normal business routines, independent of one another, of course are of no moment at this pleading stage.  *See, e.g., Universal Health*, 2014 WL 5427170, at *5 (finding that State Farm plausibly alleged the participation of each of the defendants in the conduct of the affairs of the enterprise where the complaint alleged "the course of conduct each defendant engaged in with regard to the enterprise"); *Kugler*, 2011 WL 4389915, at *6 (finding that allegations that individual doctors knowingly rendered unnecessary testing and procedures and submitted fraudulent bills through their employers, and that other defendants participated through their ownership interests in these defendants sufficiently explained "how each individual defendant participated in either the operation or management of the enterprise for purpose of satisfying *Reves*); *State Farm Mut. Auto. Ins. Co. v. Valery Kalika*, No. 04-4631, 2006 WL 6176152, at *17 (E.D.N.Y. March 16, 2006) (allegation that defendant physician "was a vital component in the scheme to treat insureds with unnecessary tests and then providing false documentation to support the tests" sufficient to satisfy *Reves*).  The Court concludes that the Complaint plausibly alleges that each of the Defendants participated in the conduct of the affairs of the enterprise.

**4.      State Farm's Complaint pleads mail fraud with sufficient particularity.**

State Farm's Complaint alleges that the racketeering activity in this case consists of predicate

16

acts of mail fraud, *i.e.* the submission through the mail of fraudulent bills and documentation. To prove mail fraud, Plaintiff must demonstrate (1) "a scheme to defraud," (2) "use of the mails in furtherance of the scheme," and (3) "scienter . . . which is satisfied by showing the defendant acted either with a specific intent to defraud or with recklessness . . . ." *Heinrich*, 668 F.3d at 404. State Farm alleges that the Defendants, using the mails to submit hundreds of fraudulent claims and documentation pursuant to a coordinated scheme to defraud State Farm, committed the predicate acts of mail fraud knowing their submissions were false and/or fraudulent.

Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to Plaintiffs' mail fraud claims, and requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "When pleading predicate acts of mail and wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Heinrich*, 668 F.3d at 404 (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)). "Rule 9(b) requires not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter." *Id.* at 406 (internal quotation marks and citations omitted). Although Rule 9(b) heightens the pleading standard, it always must be read "against the backdrop" of Fed. R. Civ. P. 8, which aims simply to put a defendant "on notice" of the claims against him so that he may reasonably respond the allegations of the complaint:

> Nonetheless, "[w]hen faced with a motion to dismiss for failure to plead fraud 'with particularity' as required by Rule 9(b) . . ., 'a court must factor in the policy of

17

simplicity in pleading which the drafters of the Federal Rules codified in Rule 8.' " *Whalen v. Stryker, Corp*., 783 F. Supp. 2d 977, 982 (E.D. Ky. 2011) (quoting *Michaels Building Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988)). "Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with Federal Rule of Civil Procedure 8." *United States ex rel. Bledsoe v. Community Health Systems, Inc*., 501 F.3d 493, 503 (6th Cir. 2007) (quoting *Michaels*, 848 F.2d at 679). "When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct." *Ibid*. "The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an informed way plaintiff['s] claim of fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (quotation marks omitted). "So long as [the plaintiff] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

*JAC Holding Enterprises, Inc. v. Atrium Capital Partners, LLC*, 997 F. Supp. 2d 710, 726 (E.D. Mich. 2014). In a complex case, involving multiple actors and spanning a significant period of time, where there has been no opportunity for discovery, "the specificity requirements of Rule 9(b) [should] be applied less stringently." *Id*. at 727 (quotation marks and citation omitted) (alteration in original). "'It is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery. Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim.'" *Id*. (quoting *Williams v. Duke Energy Int'l, Inc*., 681 F.3d 788, 803 (6th Cir. 2012)).

Defendants argue that State Farm has failed to plausibly plead a pattern of racketeering activity because it has not pled acts of mail fraud with the particularity required by Rule 9(b). The Court rejects this argument. As Judge O'Meara observed in *Physiomatrix*, analyzing similar allegations of mail fraud with a substantially similar quantum of particularity as State Farm has

offered here:

> In the context of a RICO action, State Farm has alleged fraud with sufficient particularity. "In complex civil RICO actions involving multiple defendants, Rule 9(b) does not [] require that the 'temporal or geographic particulars of each mailing made in furtherance of the fraudulent scheme be stated with particularity, but only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.'"

*Physiomatrix*, 2013 WL 509284, at *5 (quoting *Aiu Ins. Co. v. Olmecs Medical Supply, Inc.*, No. 04-2034, 2005 WL 3710370 (E.D.N.Y. Feb. 22 2005) (omitting internal citation) (alteration added).

Judge Levy adopted this same reasoning when rejecting defendants' challenge to the similarly pled mail fraud allegations in *Universal Health*:

> Plaintiff has provided a nearly ninety-page description of how the defendants' alleged mail fraud worked, coupled with charts demonstrating the types of claims submitted as a part of this purportedly fraudulent enterprise. Each defendant has received sufficient notice of the misrepresentations it is alleged to have made. A party that causes a fraudulent bill to be submitted to an insurer may be as liable for fraud as the person whose name was on the fraudulent submission.
>
> As it did in [*Physiomatrix*], plaintiff has provided a listing of several hundred claims which each defendant is alleged to have contributed to or orchestrated. Each of these actions ultimately contributes to the fraudulent submission to plaintiff, in which each member has contributed in whole or in part to one of the hundreds of false representations specifically referenced in the complaint. Accordingly, plaintiff has adequately pled that all defendants either executed or caused the execution of the mail fraud scheme at issue here.

*Universal Health*, 2014 WL 5427170, at *4-5 (citations omitted) (alteration added).

Here, as in *Physiomatrix* and *Universal Health*, Plaintiff has sufficiently put each Defendant on notice of the misrepresentations allegedly made so that each can reasonably know where to begin the task of responding to the allegations. The following allegations in the Complaint flesh out the details of the alleged scheme to defraud, the use of the mails in furtherance of that scheme and the facts from which scienter can be inferred:

19

¶ 173.  Defendants intentionally and knowingly made false and fraudulent statements of material fact to State Farm by submitting, and causing to be submitted, hundreds of fraudulent bills and related documentation that contained false representations of material fact.

¶ 174.   The false representations of material fact include that (a) the Prescribing Physicians and physicians employed by and associated with the Prescribing Clinics legitimately examined and prescribed physical therapy and occupational therapy that was medically necessary and tailored to the unique needs of each patient, when in fact they did not do so; (b) the Prescribing Physicians and physicians employed by and associated with the Prescribing Clinics legitimately determined that patients were disabled; (c) the Treatment Facilities provided treatments that were medically necessary and tailored to the unique needs of each patient, when in fact they were not, if they were provided at all; (d) both physical therapy and occupational therapy services were necessary and performed when in fact they were not; (e) MRI tests were ordered that were medically necessary and tailored to the unique needs of each patient, when in fact they were not; and (f) the services were lawfully rendered and were reimbursable, when in fact they violated Michigan's prohibition on self-referrals. The fraudulent bills and dates of first mailings are described in Exs. 1, 2 and 27. Representative samples of these bills and supporting documentation are attached as Exs. 13, 28 and 29.

¶ 175.  Defendants knew that the above-described misrepresentations made to State Farm relating to the purported examination, evaluation, diagnoses, and treatment of patients were false and fraudulent when they were made.

¶ 182.   Pointe, New Era I, New Era II, Choice, Mundy, Medical Evaluations, Gunabalan, Quiroga, Ruden, Beale, Hoban, El-Sayed, Bazzi, and Bio-Magnetic are or have been employed by and associated with the Treatment Enterprise.

¶ 183.   Pointe, New Era I, New Era II, Choice, Mundy, Medical Evaluations, Gunabalan, Quiroga, Ruden, Beale, Hoban, El-Sayed, Bazzi, and Bio-Magnetic have knowingly conducted and/or participated, directly or indirectly, in the conduct of the Treatment Enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of United States mails to submit to State Farm hundreds of fraudulent claims, consisting of bills and supporting documentation that were fraudulent in that they were for examinations, diagnoses, MRIs, and treatments, which were not performed, were performed pursuant to a Predetermined Protocol that was designed and carried out to enrich Defendants by maximizing collection of the patients' No-Fault Benefits, and not to benefit the patients. The false representations of material fact include that (a) the Prescribing Physicians and physicians employed by and associated with the Prescribing Clinics legitimately examined and prescribed physical therapy and occupational therapy that was medically necessary and tailored

to the unique needs of each patient, when in fact they did not do so; (b) the Prescribing Physicians and physicians employed by and associated with the Prescribing Clinics legitimately determined that patients were disabled; (c) the Treatment Facilities provided treatments that were medically necessary and tailored to the unique needs of each patient, when in fact they were not, if they were provided at all; (d) both physical therapy and occupational therapy services were necessary and performed when in fact they were not; (e) MRI tests were ordered that were medically necessary and tailored to the unique needs of each patient, when in fact they were not; and (f) the services were lawfully rendered and were reimbursable, when in fact they violated Michigan's prohibition on self-referrals.

¶ 184.  The fraudulent bills and corresponding mailings which comprise the pattern of racketeering activity identified through the date of this Complaint are described, in part, in Exs. 1, 2 and 27. Representative samples of these bills and supporting documentation are attached as Exs. 13, 28 and 29.

Paragraphs 85 and 112 of the Complaint allege particular patient testimony in support of the allegation that some services were billed for but never in fact provided.

The Charts attached as Exhibits to the Complaint, referenced in these paragraphs of the Complaint, identify the Defendant involved in a particular course of treatment and submission to State Farm and reveal when the false services were rendered with respect to the identified patients. The Charts identify a representative fraudulent mailing by date for each RICO event.  These Charts also reveal the dates of service that are alleged to have involved fraudulent conduct, *i.e.* they identify the first and last dates of service and the total number of visits involved, which State Farm alleges identifies the entire range of services, each one of which they claim to have been a part of the fraudulent scheme.  Defendants question how Plaintiff intends to establish that each and every visit in the treating time frame involved a fraudulent service provided pursuant to the alleged predetermined protocol.  But that is what has been alleged and this is a factual matter of proof that is not appropriately addressed at this pleading stage.  What is important here is that the allegations of the Complaint, read in conjunction with the detail provided in the Exhibits, contain sufficient

21

factual content to put Defendants on notice of the fraud that they are alleged to have committed or of which they are alleged to have been a part.

The fact that Defendants may have to read the allegations of the Complaint in conjunction with the detail provided in the Exhibits does not render the pleading insufficient to put them on notice of the fraud that they are alleged to have committed or of which they are alleged to have been a part.  "Each of these actions ultimately contributes to the fraudulent submission to plaintiff, in which each member has contributed in whole or in part to one of the hundreds of false representations specifically referenced in the complaint." *Universal Health*, 2014 WL 5427170, at * 3. *See also Physiomatrix*, 2013 WL 509284, at *5 ("In addition to the list of allegedly fraudulent claims, State Farm has specified the overall fraudulent scheme in the complaint, thereby satisfying the pleading requirements."); *Allstate Ins. Co. v. Linea Latina De Accidentes, Inc.*, 781 F. Supp. 2d 837, 847 (D. Minn. 2011) ("Where a plaintiff alleges a systematic practice of the submission of fraudulent claims over an extended period of time, the plaintiff need not allege the specific details of every fraudulent claim. Instead, the plaintiff must allege some representative examples of the fraudulent conduct with particularity.") (citing *United States ex rel. Joshi v. St. Luke's Hosp., Inc*., 441 F.3d 552, 557 (8th Cir. 2006)); *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 372-73 (E.D.N.Y. 2012) (finding that in the RICO context, a pleading that explains the details of the allegedly fraudulent scheme and provides several representative examples of the claims at issue satisfies the pleading requirement of Rule 9(b)).  State Farm's Complaint provides a level of detail that is sufficient at the pleading stage to satisfy the particularity requirement of Rule 9(b).

### 5.    State Farm has adequately pled a RICO conspiracy.

Defendants only argument for dismissal of State Farm's RICO conspiracy claim is that

because State Farm has failed to plausibly plead one or more elements of its § 1962(c) claim, its § 1962(d) claim must also be dismissed. Because the Court concludes, as discussed *supra*, that State Farm has plausibly pled a § 1962(c) claim, it likewise concludes that it has adequately pled a RICO conspiracy. *See Lyons*, 843 F. Supp. 2d at 374 (finding that because substantive RICO allegations are legally sufficient to state a claim, conspiracy claim likewise survives motion to dismiss).

### B. Motion to Dismiss Time-Barred Claims by Gunabalan, Michigan Visiting Physicians, Mundy and Bio-Magnetic (ECF No. 21)[2]

Defendants argue that some portion of State Farm's RICO, common law fraud, unjust enrichment and declaratory relief claims are barred by the applicable statutes of limitation.

### 1. The Court cannot conclude, at this pleading stage, that the RICO claims are time-barred as a matter of law.

"RICO does not provide an express statute of limitations for actions brought under its civil enforcement provision." *Agency Holding Corp. v. Mally-Duff & Associates, Inc.*, 483 U.S. 143, 146 (1987). A four-year statute of limitations has been judicially adopted as "the most appropriate limitations period for RICO actions." *Id.* at 156. The issue raised by Defendants in this motion to dismiss relates to the proper accrual rule to be applied to the 4-year RICO limitations period. Defendants urge the Court to apply an injury occurrence accrual rule, and argue that State Farm's claims accrued when it paid the allegedly fraudulent claims and that, therefore, any claims for payments made before April 29, 2010 (4 years before the Complaint was filed on April 29, 2014) are time-barred. The Defendants concede that the only cases in the Sixth Circuit that have addressed

---

[2] Joining in: Pointe Physical Therapy (ECF No. 26); New Era Physical Therapy, New Era PT Services, El-Sayed, Bazzi, Medical Evaluations, Beale and Hoban (ECF No. 28); Quiroga (ECF No. 32); Ruden (ECF No. 46). The Court's disposition of the principal motion also resolves all parties' joinders in this motion.

this issue have applied a discovery accrual rule to RICO claims, finding that "[t]he limitations period for RICO claims accrues when a plaintiff knew or should have known of an injury." *Taylor Group v. ANR Storage Co.*., 24 F. App'x 319, 325 (6th Cir. 2001). *See also Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, (6th Cir. 2005) ("The limitations period for RICO claims accrues when a plaintiff knew or should have known of an injury.") (citing *Rotella v. Wood*, 528 U.S. 549, 554-55 (2000)). Defendants argue, however, that these cases are unpublished and Defendants suggest that when the Supreme Court faces this issue head on, it will likely adopt an injury occurrence rule, and therefore urge this Court to do so now. In *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323 (E.D. Mich. 2011), Judge Lawson faced this same argument from defendants there and concluded that he was bound to follow the rule as presently articulated by the Sixth Circuit:

> The defendant further argues that the injury occurrence rule for when a cause of action accrues applies to civil RICO claims, as, according to the defendants, the Supreme Court will likely adopt this rule when it considers the issue. However, the rule in the Sixth Circuit, at least for the present, is that the statute of limitations does not begin to run until "a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation." *Sims v. Ohio Cas. Ins. Co.*, 151 Fed. Appx. 433, 435 (6th Cir. 2005) (citing *Rotella v. Wood*, 528 U.S. 549, 553–55, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)); *see also Taylor Group v. ANR Storage Co.*, 24 Fed. Appx. 319, 325 (6th Cir. 2001) ("The limitations period for RICO claims accrues when a plaintiff knew or should have known of an injury.") ( *citing Rotella*, 528 U.S. at 554–55, 120 S.Ct. 1075). The plaintiff alleges that it did not discover the fraudulent scheme until 2007. That allegation is sufficient to preclude dismissal at this stage of the proceedings on statute of limitations grounds.

811 F. Supp. 2d at 1340.

So too here. Even were the Court persuaded by Defendants' "passionate" appeal for application of the injury occurrence rule, the Court is persuaded, if not compelled, by the decisions of the Sixth Circuit also to apply the injury discovery rule.

Judge Levy applied this same accrual rule in *Universal Health*, holding that under the "knew or should have known" accrual rule, Plaintiffs' RICO claims survived the challenge at the pleading stage where their claim that they learned of the fraud only shortly before filing suit could not be defeated at the pleading stage by defendants' argument that they "should" have known. 2014 WL 5427170, at *7. Defendants similarly argue here that even under the injury discovery rule, RICO claims preceding April 29, 2010 are time-barred because State Farm was required under the No-Fault act to require "reasonable proof" of a claim before payment of that claim, and therefore "should" have discovered each alleged fraudulent submission at the time each claim was submitted for payment. The Court rejects such an argument, at least at this pleading stage, where the very proof of reasonableness is itself alleged to have been fraudulent. *See, e.g.,* Complaint ¶ 152, alleging that based upon Defendants' material misrepresentations, State Farm did not discover and could not have discovered the fraud scheme until it reviewed hundreds of bills and documents which, taken together, revealed the fraudulent scheme.

### 2. State Farm plausibly pleads fraudulent concealment and therefore the common law fraud and unjust enrichment claims survive Defendants' motion to dismiss on statute of limitations grounds.

The "statute of limitations is tolled where the defendants engaged in conduct masking the existence of claims." *State of Mich. ex rel. Kelley v. McDonald Dairy Co.*, 905 F. Supp. 447, 450 (W.D. Mich. 1995). This rule is codified in Michigan law at Mich. Comp. Laws § 600.5855 which provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by

25

the period of limitations.

"Plaintiffs must allege three elements to establish fraudulent concealment []: 1) wrongful concealment by the defendants of their actions; 2) failure of the plaintiffs to discover the operative facts that are the basis of the cause of action within the statute of limitations; and 3) plaintiffs' exercise of due diligence until discovery of the facts." *Kelley*, 905 F. Supp. at 451 (alteration added). State Farm has plausibly alleged fraudulent concealment. First, State Farm alleges that the fraudulent bills and documentation appeared legitimate on their face but that Defendants knew the bills and documentation were false, thus adequately pleading wrongful concealment. State Farm alleges that the manner in which the bills were submitted also concealed the fraud, i.e. they appeared facially legitimate, they were submitted over time and from multiple entities whose interconnectedness had been disguised. "The second and third elements of fraudulent concealment are best addressed together." *Id*. at 453. State Farm alleges that it reasonably assumed that the Defendants were complying with their ethical obligation to act honestly and with integrity and therefore could not have discovered the fraudulent scheme until it was able to review hundreds of bills and documentation together, "revealing the predetermined protocol." Compl. ¶ 150, 152. Without expressing any opinion as to the merit of these allegations, the Court finds them sufficient, at this pleading stage, to plausibly allege a claim of fraudulent concealment. *See Universal Health*, 2014 WL 5427170, at *7 ("It is premature at this stage of the litigation to dismiss a claim on statute of limitations grounds where plaintiff has plausibly pled that its claim arose within the statute of limitations.") Because fraudulent concealment operates to toll the statute of limitations on both Plaintiffs' common law fraud and unjust enrichment claims, giving State Farm two years from the time that it reasonably could have discovered the alleged fraud to file its claims, the Court denies

the motion, at this stage, to dismiss these claims as time-barred.

### 3.   State Farm's declaratory judgment claim also survives the pleading challenge.

Defendants' argue that the declaratory judgment claims fail because the underlying claims for substantive relief must fail.  Because the Court concludes that the underlying claims do not fail substantively at this pleading stage, it denies the motion to dismiss the declaratory judgment claims.

### C.   Defendant Pointe Physical Therapy, LLC's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. (9)(b) and 12(b)(6) (ECF No. 23)[3]

Pointe files this motion: (1) repeating the arguments made by the Gunabalan Defendants regarding the pleading sufficiency of the fraud allegations of the Complaint, (2) arguing that the punitive damages claim must be dismissed because punitive damages are not allowed under Michigan law, (3) seeking dismissal of the declaratory judgment claim because it is vague, (4) arguing that Plaintiff lacks standing to assert claims based on alleged violations of the Michigan self-referral law, and (5) seeking dismissal of Plaintiff's unjust enrichment claim because it arises from an express contract.  For the reasons that follow, the Court DENIES this motion.

### 1.   State Farm's fraud claims are alleged with sufficient particularity.

As the Court discussed *supra* in section IIIA4, State Farm has pled its fraud claims with sufficient particularity to put each of the Defendants on notice as to the claims that are made against them and to enable them to prepare their defense to those claims.  More particularly responding to the alleged pleading deficiencies raised in the Pointe motion, the Defendants have again failed to demonstrate that the allegations fail to apprise them of the claims against them.

---

[3] Also joining in this motion are:  Gunabalan, Bio-Magnetic, Michigan Visiting Physicians, Mundy (ECF No. 27); New Era Physical Therapy, New Era PT Services, El-Sayed, Bazzi, Medical Evaluations, Beale and Hoban (ECF No. 28); Quiroga (ECF No. 32); Ruden (ECF No. 46).  The Court's disposition of the principal motion also resolves all parties' joinders in this motion.

27

Charts 1 and 2 attached as Exhibits to the Complaint identify 209 "RICO Events" which include, as to each "RICO Event," the claim number, the Prescribing Clinic and/or Prescribing Physician, the first and last dates of service at the Treatment Facilities, the duration of the treatment, the date on which a bill for services was mailed. Additional Exhibits to the Complaint reference the same "RICO Event" numbers, giving the Defendants all of the information needed to discern which claims are involved, which Defendants are allegedly involved as to each RICO Event, which treatments are in question, and which bills are claimed to fraudulent. State Farm does not have to *prove* its claims in the Complaint and supporting documentation. It only has to put the Defendants on notice of the claims with sufficient particularity that the Defendants can identify the claims and begin to prepare their defense.

The Court concludes that the allegations of the Complaint, along with the supporting Exhibits and Charts (and in some instances proposed witness testimony, *see, e.g.* ¶¶ 85, 112, 174, 183), sufficiently apprise the Defendants of the claims involved (Claim Numbers are provided) and the nature of the services allegedly either not provided or not medically necessary that were provided. Specifically addressing Pointe's challenges, the Complaint (¶¶ 5, 65, 83-86) alleges that after Pointe hired an occupational therapist in 2010, the Prescribing Physicians began falsely diagnosing head injuries so that they could order, and Pointe could administer, additional and unnecessary occupational therapy. In support, Exhibit 3 to the Complaint lists 28 "RICO Events" by number, which can be further identified by reference to Exhibits 1 and 2, which State Farm claims involve false diagnoses of head injuries for the purpose of ultimately billing State Farm for unnecessary therapy. Defendants may dispute the substance of these allegations, but the Complaint and the Exhibits make it clear what claims are involved, which Defendants are involved and give

28

the Defendants sufficient notice of those claims so that they can prepare their defense.  This is all that is required at this pleading stage.  Similarly, with regard to the allegations that after Pointe hired an occupational therapist in 2010, the Prescribing Physicians and Prescribing Clinics began prescribing unnecessary occupational therapy in addition to physical therapy (Complaint ¶¶ 4, 83-86, 116), these claims are readily identifiable by reference to Exhibit 1 to the Complaint.

Defendants argue that State Farm has not provided the type of detail found sufficiently particularized by Judge Lawson in *State Farm Mut. Auto. Ins. Co. v. Qadir*, No. 11-11442 (E.D. Mich. 2010) (ECF No. 64, Defs.' Reply 5, .)  In fact, however, the very detail that Defendants claim is lacking is present in State Farm's Complaint: each fraudulent claim (by number), the first and last dates of service (in this case, unlike in *Qadir*, State Farm alleges that *all* services provided in the relevant time frame, and all bills submitted for those services, were fraudulent), the services allegedly provided, the date of a representative billing, and the details of the allegedly illegitimate practice (i.e. that the duration and types of treatments billed for were not provided or unnecessary). State Farm does not have to establish at this point that in fact the services were not provided, or that they were unnecessary.  These allegations the Court must accept as true at this pleading stage.  What is significant at this stage, and for purposes of this motion, is that the Defendants are sufficiently apprised of the claims that are alleged to have been fraudulent, the dates of service and the nature of services rendered that State Farm claims were either excessive or not provided.  Defendants of course can attempt to demonstrate, as the case proceeds, that prescribing the same treatment and the same modalities for each patient, and for the durations described, was a legitimate form of treatment in each instance, *i.e.* that the alleged "predetermined protocol" was in fact a perfectly legitimate treatment plan.   It is sufficient for our present purposes that State Farm identifies 209 RICO Events

with sufficient particularity and alleges with specificity the reasons why they were false, *i.e.* ¶¶ 44, 174, 183. Defendants can determine from this the nature of the claims against them and where to begin to prepare their defense that each of the identified claims was *not* false or fraudulent.[4]

### 2.    Michigan law does allow for recovery of exemplary damages.

State Farm's counsel acknowledged at the hearing that it had improperly labeled these damages as punitive when in fact, under Michigan law, they are considered exemplary. Michigan courts distinguish between "punitive" and "exemplary" damages:

> The terms "punitive" and "exemplary" damages have frequently been confused or used interchangeably. However, the focus of the two damages is different. Punitive damages are awarded solely to punish or to make an example of a defendant because of the malice or recklessness with which he acted. *Wronski v. Sun Oil Co.*, 89 Mich. App. 11, 27, 279 N.W.2d 564 (1979), *lv. den.* 407 Mich. 863 (1979), *Ray v. Detroit*, 67 Mich. App. 702, 704, 242 N.W.2d 494 (1976), lv. den. 397 Mich. 828 (1976). Exemplary damages are awarded for injury to feelings and for the sense of indignity and humiliation suffered by a plaintiff because of injury maliciously and wantonly inflicted. *Ray*, *supra*. In short, the former focuses on "punishing" the defendant and the latter focuses on "compensating" the plaintiff.

*American Central Corp. v. Stevens Van Lines*, 103 Mich. App. 507, 514-15 (Mich. Ct. App. 1981).

Similarly, the Michigan Court of Appeals, in *Jackovich v. Gen'l Adjustment Bureau, Inc.*, 119 Mich. App. 221 (1982) reiterated this maxim of Michigan law:

> "The terms 'exemplary' damages, 'punitive' damages  and 'vindictive' damages have frequently been confused or used interchangeably. However, in Michigan only exemplary damages which are compensatory in nature are allowable. They are recoverable for injury to feelings and for the sense of indignity and humiliation resulting from injury maliciously and wantonly inflicted. Recovery is restricted to the party who has received the physical injury. They are never allowed, however, for the purpose of punishing or making an example of a defendant. *Smith v Jones*, 382 Mich 176; 169 NW2d 308 (1969) (concurring opinion of Justice Adams), *Ross v Leggett*, 61 Mich 445; 28 NW 695 (1886), *McFadden v Tate*, 350 Mich 84; 85

---

[4] Defendants argue that the charts attached as Exhibits to Plaintiff's Complaint violate HIPPA. This is a red herring and is irrelevant to the issues before the Court.

> NW2d 181 (1957), *Detroit Daily Post Co v McArthur*, 16 Mich 447 (1868), *Hyatt
> v Adams*, 16 Mich 180 (1867)."

119 Mich. App. at 235-36 (quoting  *Ray v. Detroit*, 67 Mich. App. 702, 704, 242 N.W.2d 494 (1976)).

State Farm urges the Court to consider the allegations of the Complaint, specifically paragraph 178, which complains of Defendants' "wilful, reckless, and/or wanton conduct," rather than the label that State Farm improperly placed on its pleading.  These are adjectives that Michigan courts have invoked when defining conduct that can serve as the basis for a claim for exemplary damages.   Defendants do not dispute that "exemplary" damages are allowed.  The Court concludes that although labeled as "punitive," the nature of the special damages State Farm seeks fits comfortably within the definition of exemplary damages under Michigan law and therefore are properly pled in the Complaint.

### 3.    State Farm's Declaratory Judgment claim is not impermissibly vague.

Defendants argue that State Farm's declaratory judgment claim is impermissibly vague and should be dismissed because State Farm does not identify the claims that are at issue in this Count. The Defendants argue that the declaratory judgment Counts could be read as precluding the Defendants from submitting *any* bills to State Farm in the future.  State Farm responds that Defendants are not precluded from submitting bills for payment.  State Farm argues in response that it seeks a  declaratory ruling that it need not pay any bills for the claims identified on the Exhibits to the Complaint or any bills on claims submitted during the pendency of this case that State Farm is able to prove at trial are false and fraudulent.

This Court already addressed this argument to a degree in its prior Opinion and Order, noting that a substantial controversy of sufficient immediacy has been alleged in this Count.  State Farm

31

has clarified that it "is seeking declaratory relief only with respect to 'State Farm's obligation as to pending bills and does not seek a declaration that Bio-Magnetic and the Treatment Facilities cannot submit future bills.'" (ECF No. 70 at 16) (quoting ECF No. 49, State Farm's Resp. 22 n. 13.). In fact, Defendants do not address this argument in their Reply.

### 4. State Farm does not attempt to assert a claim under the Michigan self-referral laws.

Defendants argue that State Farm does not have standing to assert a claim under Michigan self-referral law. True but irrelevant. The parties are in agreement that State Farm cannot assert a private cause of action against the Defendants under Michigan's self-referral laws. State Farm never attempted to assert such a claim. State Farm argues that one category of fraudulent statements made by Defendants is comprised of alleged misrepresentations that the services for which they sought reimbursement were lawfully rendered and reimbursable when in fact, so State Farm alleges, the services actually were provided in violation Michigan's self-referral laws. State Farm argues that when Defendants submitted documentation and bills for payment that represented that the charges and documentation complied with the law, these statements were false representations of fact and were therefore predicate acts of mail fraud.

Defendants argue that State Farm cannot rely on these mailings as RICO predicate acts because violation of the Michigan self-referral laws is not among the statutes listed in RICO. Defendants argue that allegations that a defendant violated a statute not enumerated among those listed in the RICO statute cannot form the basis for a RICO claim. But Defendants argument misses the mark. State Farm alleges predicate acts of mail fraud based on the false and fraudulent documents and bills submitted by the Defendants which sought payment for services that they represented had been lawfully rendered when in fact providing such services in some instances

violated Michigan's self-referral laws.  State Farm is not attempting to assert a claim for relief under the Michigan statute prohibiting self-referrals; it is pointing to alleged violations of that statute, which are necessarily misrepresented when Defendants assert that their services have been lawfully rendered, as part of its premise for its fraud and racketeering claims.

Defendants argue that the Michigan Supreme Court's decision in *Miller v. Allstate Ins. Co*., 481 Mich. 601 (2008) precludes State Farm's reliance on a violation of Michigan's self-referral laws as a basis to deny a claim and therefore precludes reliance on such violations as a basis for a predicate act under RICO or for a common law fraud claim. In *Miller* the Michigan Supreme Court held that because the Michigan Business Corporations Act ("BCA") contained an irrebuttable presumption that "the mere filing of articles of incorporation constitutes '*conclusive evidence*' of the corporation's legality," Allstate did not have standing to challenge plaintiffs' claims for payment on the basis that they provided services in violation of the BCA.   *Id*. at 611-12 (emphasis in original).  The court interpreted this "irrebuttable presumption of legality" as an express directive from the Legislature that only the Attorney General could bring a challenge to corporate status and thus Allstate lacked statutory standing to assert a claim under the BCA and therefore was precluded from using a violation of the BCA as an affirmative defense to deny payment of a claim.  *Id*. at 612.  Michigan courts, however, have distinguished *Miller* and have held that violations of the Michigan Public Health Code, of which the self-referral laws are a part, do not contain such an irrebuttable presumption against the insurer's statutory standing and therefore can be a basis for an insurer to challenge the lawfulness of services rendered to deny a claim.  *See, e.g., Zigmond Chiropractic, P.C. v. AAA Michigan*, No. 304756, 2013 WL 3836238, *lv denied*, 495 Mich. 992 (2014) (distinguishing *Miller* and finding nothing in the Public Health Code that contained an irrebuttable presumption of

33

lawfulness that would preclude AAA from litigating the Public Health Code-related claims and finding that a no-fault insurer may contest the lawfulness of services allegedly provided by health care professionals as beyond the scope of their licensing under the Public Health Code) (citing *Psychosocial Serv. Assoc's, PC v. State Farm Mut. Auto. Ins. Co.*, 279 Mich. App. 334, 337–345, 761 N.W.2d 716 (2008); *Cherry v. State Farm Mut. Auto. Ins. Co.*, 195 Mich. App. 316, 318–320, 489 N.W.2d 788 (1992)).   State Farm's common law fraud and RICO claims are not premised on State Farm's ability to challenge Defendants' corporate status under the BCA.   Accordingly, *Miller* is unpersuasive.

Because Defendants cannot support their claim that State Farm would be precluded from challenging claims for payment based on services provided by the Defendants that were rendered in violation of Michigan's self-referral laws, the Court concludes that nothing precludes State Farm from relying on these alleged violations as a basis for their assertion that the Defendants' bills and documentation were false and fraudulent when Defendants represented that the services were rendered in compliance with all applicable laws.  *In accord Physiomatrix*, 2013 WL 509284, at *2 (finding defendants' argument that State Farm did not have standing to bring a private right of action under the Michigan Insurance Code to be a "red herring" because State Farm was not seeking relief under the Michigan Insurance Code but brought common law fraud and unjust enrichment claims).

### 5.     State Farm's unjust enrichment claim will go forward.

As Judge Levy noted in *Universal Health*, because State Farm denies the existence of an express contract between itself and Defendants, State Farm is permitted to plead unjust enrichment. "'[U]nless it is undisputed that there is an express contract between the same parties covering the same subject matter, State Farm is entitled to plead unjust enrichment as an alternative claim of

relief.'" *Universal Health*, 2014 WL 5427170, at *11 (quoting *Physiomatrix*, 2013 WL 509284, at *5) (alteration in original).

> **D.    New Era Physical Therapy, PC, New Era PT Services Inc., Sherif El-Sayed, Amale Bazzi, Medical Evaluations, PC, James Beale, Jr., and Sean Hoban (collectively "the New Era Defendants" move to dismiss pursuant to 12(b)(6) and 9(b).  (ECF No. 25.)[5]**

The New Era Defendants file this motion arguing (1) that State Farm's Complaint is precluded by provisions of the Michigan Insurance Code, (2) that State Farm's Complaint must be dismissed because the legal theories underlying the Complaint are based on statutes that do not create a private cause of action, and (3) that the Complaint fails to plead fraud with sufficient particularity.

> **1.    Nothing in the Michigan Insurance Code precludes State Farm's claims.**

Defendants premise this argument by characterizing State Farm's Complaint as an "intimidation suit" against health care providers who specialize in treating automobile accident victims.  (ECF No. 25, 3-5.)  Defendants allege that "the insurance industry has targeted providers who specialize in providing services to auto accident victims and has made self-serving determinations of fraud and abuse on the part of such providers as a mechanism of waging economic warfare against them."  *Id.* at 6.  Of course none of these allegations are found on the face of Plaintiff's Complaint and cannot be considered by the Court on this motion to dismiss.

Defendants cite three cases which they assert support the contention that courts have "recognized the nature of these suits and have not countenanced them."  *Id.* at 5.  None of these

---

[5] Joining in: Pointe Physical Therapy (ECF No. 26); Gunabalan, Bio-Magnetic, Michigan Visiting Physicians, Mundy (ECF No. 27); Quiroga (ECF No. 32); Ruden (ECF No. 46).  The Court's disposition of the principal motion also resolves all parties' joinders in this motion.

cases stands for the proposition that the Michigan Insurance Code precludes an insurer from maintaining a fraud suit against a health care provider. In *Allstate Ins. Co. v. A&A Medical Transport Servs., Inc.*, No. 260766, 2007 WL 162477 (Mich. Ct. App. Jan. 23, 2007), the court of appeals addressed the question presented in *Miller*, *supra*, and concluded that a health care provider's failure to properly incorporate did not relieve an insurer of the obligation to make no-fault payments. As discussed *supra*, State Farm does allege such a claim here and *Medical Transport*, like *Miller*, is inapt. In *Allstate Ins. Co. v. Lewerenz*, No. 260766, 2006 WL 2986611 (Mich. Ct. App. Oct. 19, 2006), the court of appeals reviewed the trial court's grant of the health care providers' motion for summary disposition. The court of appeals affirmed the trial court's determination that plaintiff failed to present sufficient documentary evidence to establish a genuine issue of material fact as to plaintiff's claims that defendants fraudulently billed the plaintiff for services not rendered or for unnecessary services. *Id*. at *8-9. Nothing in this case stands for the proposition that such a fraud claim is precluded under the Michigan Insurance Code. Finally, in *Allstate Ins. Co. v. Global Medical Billing, Inc.*, No. 09-14975, 2011 WL 721299 (E.D. Mich. Feb. 23, 2011), Judge Zatkoff found that Allstate, whose fraud allegations were based on claims for which they had received reimbursement from the Assigned Claims Facility ("ACF"), lacked constitutional standing because it failed to allege injury. *Id*. at *3. Judge Zatkoff also noted that Allstate did not have standing to bring a claim under Mich. Comp. Laws § 500.4511, which sets forth the criminal sanctions for a fraudulent insurance act. *Id*. On appeal, the Sixth Circuit affirmed the trial court's ruling that plaintiff lacked constitutional standing as to claims for which they had received reimbursement (a point which plaintiff in fact conceded) and refused to reverse Judge Zatkoff's denial of plaintiff's motion for reconsideration, in which plaintiff attempted to assert, for

36

the first time, fraud claims based on non-reimbursed claims.  *Allstate Ins. Co. v. Global Medical Billing, Inc.,* 520 F. App'x 409,  412-13 (6th Cir. 2013).  The Sixth Circuit found that plaintiff's failure to assert this "potentially winning argument" at the proper time, or to move to amend to add such a claim in the trial court, precluded plaintiff from "receiving a second bite at the apple" by raising it on appeal.  *Id.* at 409-10.  *Global Medical* in no way supports Defendants' argument that the Michigan Insurance Code precludes State Farm's claims in this action, which allege common law fraud, RICO violations and unjust enrichment and do not proceed under any provision of the Michigan Insurance Code.

The Court is also persuaded to reject this argument based on the numerous substantially similar fraud actions that are pending in this district, several of which are discussed *supra*, none of which has found such actions to be barred by provisions of the Michigan Insurance Code.  *See, e.g., Physiomatrix*, *Universal Health*, *Medical Evaluations*, *supra* and *State Farm Mut. Ins. Co. v. Qadir*, No. 11-11442 (E.D. Mich. 2011).

> **2.**     **The absence of a private cause of action under the Michigan Insurance Code, Michigan's Anti-Solicitation Statute and the federal Stark Law does not preclude State Farm from bringing its common law fraud, RICO and unjust enrichment claims.**

As discussed *supra*, the fact that no private cause of action is available under the statutes which State Farm alleges in the Complaint that Defendants have violated is irrelevant.  State Farm is not attempting to assert claims under any of these of statutes.  *See, e.g. Physiomatrix*, 2013 WL 509284, at *2 (acknowledging that the Michigan Insurance Code does not provide a private right of action for State Farm's claim of insurance fraud but finding this argument "a bit of a red herring" because State Farm did not seek relief under M.C .L. 500.4511 but rather brought common law fraud and unjust enrichment claims).

### 3. State Farm's Complaint pleads fraud with sufficient particularity.

The Court has already discussed this issue *supra* (*see* sections IIIA4 and IIIC1) in some detail.  The New Era Defendants present nothing new that would persuade the Court to reach a different result.  The Defendants' argument that disputes regarding  "medical necessity" are matters of opinion and therefore cannot be the basis for a fraud claim has necessarily been rejected by implication by every one of the multiple courts, discussed *supra*, that have permitted such claims to proceed.  *See also, e.g., Allstate Ins. Co. v. Palterovich*, 653 F. Supp. 2d 1306, 1323 (S.D. Fla. 2009) (finding allegations of false and misleading statements concerning third parties' medical conditions alleged misstatements concerning material facts)*.*  The New Era Defendants have not cited one case in which a RICO claim or a common law fraud claim by an insurer against a health care provider has been dismissed based upon a finding that "medical necessity" is a matter of opinion and therefore statements regarding medical necessity cannot form the basis for a fraud claim.  Accordingly, and in view of the number of cases that have proceeded on such theories, the Court rejects this argument.

### E. Gunabalan, Michigan Visiting Physicians, Mundy and Bio Magnetic's Motion to Strike from the Complaint, Pursuant to Fed. R. Civ. P. 12(f), Allegations Pertaining to Non-Parties Michigan Bio-Tech, Maple Millennium and Michigan Orthopedic Surgeons pursuant to 12(f) (ECF No. 22).[6]

Defendants claim in this motion that State Farm has "gratuitously" inserted material into the Complaint regarding non-parties Michigan Bio-Tech Partners, LLC ("Biotech"), Maple Millennium Medical Center, LLC ("Millennium") and Michigan Orthopedic Surgeons, P.C. ("Orthopedic

---

[6]   Joining in: Pointe Physical Therapy (ECF No. 26); New Era Physical Therapy, New Era PT Services, El-Sayed, Bazzi, Medical Evaluations, Beale and Hoban (ECF No. 28).  The Court's disposition of the principal motion also resolves all parties' joinders in this motion.

Surgeons"), who are not defendants in this case and are not alleged to have participated in the alleged fraudulent scheme. Defendants move, under Fed. R. Civ. P. 12(f), to strike allegations relating to these parties. Federal Rule of Civil Procedure 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

"While this Court has wide discretion to strike 'redundant, immaterial, impertinent, or scandalous' material from a pleading, courts tend to disfavor motions to strike and they are infrequently granted, because a motion to strike 'proposes a drastic remedy.'" *L and L Gold Assoc., Inc. v. American Cash for Gold, LLC*, No. 09-10801, 2009 WL 1658108, at *1 (E.D. Mich. June 10, 2009) (quoting *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000)). "An allegation is 'impertinent' or 'immaterial' when it is not relevant to the issues involved in the action. 'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that 'detracts from the dignity of the court.'" *Id.* (quoting *Cobell v. Norton*, 225 F.R.D. 1, 5 (D.D.C. 2003)).

Here State Farm alleges, and Defendants do not deny, that Defendant Gunabalan has an ownership interest in Biotech, Millennium and Orthopedic Surgeons. The allegations of the Complaint relating to Biotech are as follows:

> 132. Gunabalan and physicians acting under his direction at the Prescribing Clinics referred patients of the Prescribing Clinics to the MRI Facility in which Gunabalan has an ownership interest, namely Bio-Magnetic. In addition, Gunabalan and the Prescribing Physicians and Clinics also sent patients to another MRI Facility that Gunabalan owns and/or controls, Michigan Biotech Partners LLC ("Michigan Biotech"). Michigan Biotech operates under an assumed name, The Imaging Center, though it submits bills under the name Michigan Biotech and from Bio-Magnetic's address at 30781 Stephenson Highway, Madison Heights, Michigan. *See* Ex. 24. Michigan Biotech d/b/a The Imaging Center and Bio-Magnetic are part of a single group of MRI Facilities referenced on a common webpage and on reports of MRI

results, with the webpage and National Plan and Provider Enumeration System identifying Gunabalan as President of the group. *See* Ex. 25.

164.  Defendant Ram Gunabalan resides in and is a citizen of Michigan. Gunabalan has been a licensed medical doctor in Michigan since 1973. At all relevant times, he owned and/or controlled the Treatment Facilities and Prescribing Clinics, and thus, directed their activities and the activities of those who were employed by and associated with them. In addition, Gunabalan owns Bio-Magnetic, the MRI Facility where many of the patients who purported to treat at the Prescribing Clinics and Treatment Facilities were sent for MRIs. Gunabalan also owns Michigan Biotech, another MRI facility which submits bills from Bio-Magnetic's address and to which Gunabalan and the Prescribing Physicians and Clinics also sent patients. Additionally, Gunabalan also has a financial interest in Orthopedic Surgeons P.C. and Maple Millennium Medical Center, LLC, which purported to provide spinal injections to patients who treated at the Prescribing Clinics and Treatment Facilities. *See* Ex. 26.

The additional allegations of the Complaint relating to Millennium and Orthopedic Surgeons are as follows:

141.  In addition to the provision of unnecessary MRIs, patients who treated at the Treatment Facilities and received pain management injections received these injections through entities owned or affiliated with Gunabalan, namely Orthopedic Surgeons P.C. and Maple Millennium Medical Center, LLC.

142.  Thus, Gunabalan profited not only from the patients' physical and occupational therapy at the Treatment Facilities and medical examinations performed at the Prescribing Clinics, but also from spinal injections performed at Orthopedic Surgeons and Maple Millennium.

Certainly there is nothing "scandalous" about these allegations, nor can the Court conclude at this point that they are completely irrelevant to the issues in this case.  Biotech, while not named as a Defendant, is alleged to have a been a referral facility for allegedly unnecessary MRI tests ordered by the Prescribing Physicians and Clinics.  The Complaint also alleges that Biotech sends bills from the same mailing address as Bio-Magnetic, the Defendant MRI facility owned by Gunabalan.  With regard to Millennium and Orthopedic Surgeons, the Complaint alleges that

patients who treated at the Prescribing Clinics and Treatment Facilities received pain injections at theses facilities, in which Gunabalan has an ownership interest.  State Farm need not establish at this stage of the litigation how it intends to utilize such non-party evidence at trial but the Court concludes that the allegations are of sufficient potential relevance that it will exercise its discretion to deny the motion to strike.  *See, e.g., SKS Constructors, Inc. v. Drinkwine*, 458 F. Supp. 2d 68, 80 (E.D.N.Y. 2006) (finding "that allegations of essentially the same scheme perpetrated on unnamed parties may be alleged to support a claim of closed-ended continuity").

### F.     Defendants Ruden and Quiroga's Motions to Dismiss (ECF Nos. 32, 46)

On April 23, 2015, the Court held a continuation of the motion hearing on the motions to dismiss to permit Defendants Ruden and Quiroga an opportunity to argue their individual motions. Defendant Ruden proceeds in this matter *pro se* and Defendant Quiroga is represented by counsel different from counsel representing the other moving Defendants.  Thus, both were given an opportunity to speak in support of their motions.  Both Ruden and Quiroga steadfastly deny the allegations of the Complaint as directed at them and their arguments focused on what they perceived as the paucity of allegations against them.  They deny that they prescribed treatments pursuant to predetermined protocol.  They maintain that their diagnoses were independently arrived at with respect to each individual patient based on that patient's unique presentation and that their prescriptions were in all instances consistent with the standard of care.

There will be a time and a place for these Defendants to present evidence on these issues but unfortunately at this stage of the proceedings these factual defenses cannot be considered by the Court.  For purposes of addressing these motions to dismiss, the Court must accept as true the allegations of the Complaint.  The Court finds that, for the same reasons discussed *supra* with

respect to the other individual moving Defendants, Ruden and Quiroga are not entitled to dismissal of this action against them at this stage of the proceedings.

The allegations against Ruden are contained in paragraphs 1, 29, 37, 41, 42, 99-101, 161, 162, 163 and 168 of the Complaint and against Quiroga in paragraphs 1, 70, 84, 96-98, 161, 162 and 167. Individual RICO events involving Ruden are found in Exhibit 2 to the Complaint and individual RICO events involving Quiroga are found in both Exhibits 1 and 2 to the Complaint. The Complaint alleges a connection between these Defendants and the Management Group and Treatment Facilities. The Complaint alleges that the Management Group steers patients to them and alleges that these Defendants participate in the alleged fraudulent scheme by treating and ordering therapy and/or tests pursuant to the alleged predetermined protocol. *See, e.g.* ¶¶ 42, 70, 84, 96-98, 99-101. Specifically, the Complaint alleges that these Defendants facilitated the submission of false and fraudulent documentation that resulted in Pointe and New Era's submission of fraudulent bills as set forth on Exhibits 1 and 2 to the Complaint.

The law does not require that the individual Defendants were the masterminds of the alleged scheme, only that their conduct contributed to the overall fraudulent scheme. *Fowler*, 535 F.3d at 418 (finding that it is sufficient to allege that a defendant had some part in directing the affairs of the enterprise "either by making decisions on behalf of the enterprise or by knowingly carrying them out."). Nor is there any requirement that the Defendants have been affiliated with the scheme from its inception or that they have been involved for any specific length of time. *See Universal Health*, 2014 WL 5427170, at *5 ("There is no requirement under RICO that an enterprise remain static from the moment of its inception; members may come and go, and those who joined even years after the enterprise began are just as liable for their unlawful acts under RICO as founding members.")

42

(citing *Boyle*, 556 U.S. at 952).

To reiterate the Court's reasoning *supra*, the Charts attached as Exhibits to Plaintiff's Complaint, that are further referenced in the paragraphs of the Complaint, identify Ruden and Quiroga as individuals who submitted the fraudulent bills and documentation submitted to State Farm and reveal when the alleged fraudulent statements were made with respect to the identified patients. As the Court noted *supra*, Defendants question how Plaintiff intends to establish that each and every visit in the treating time frame involved a fraudulent service provided pursuant to the alleged predetermined protocol. But that is what has been alleged and this is a factual matter not appropriately addressed at this pleading stage. What is important here is that the allegations of the Complaint, read in conjunction with the detail provided in the Exhibits, contains sufficient factual content to put Defendants on notice of the fraud that they are alleged to have committed or of which they are alleged to have been a part. "Each of these actions ultimately contributes to the fraudulent submission to plaintiff, in which each member has contributed in whole or in part to one of the hundreds of false representations specifically referenced in the complaint." *Universal Health*, 2014 WL 5427170, at * 3. *See also Physiomatrix*, 2013 WL 509284, at *5 ("In addition to the list of allegedly fraudulent claims, State Farm has specified the overall fraudulent scheme in the complaint, thereby satisfying the pleading requirements."); *Allstate Ins. Co. v. Linea Latina De Accidentes, Inc.*, 781 F. Supp. 2d 837, 847 (D. Minn. 2011) ("Where a plaintiff alleges a systematic practice of the submission of fraudulent claims over an extended period of time, the plaintiff need not allege the specific details of every fraudulent claim. Instead, the plaintiff must allege some representative examples of the fraudulent conduct with particularity.") (citing *United States ex rel. Joshi v. St. Luke's Hosp., Inc*., 441 F.3d 552, 557 (8th Cir. 2006)); *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d

43

358, 372-73 (E.D.N.Y. 2012) (finding that in the RICO context, a pleading that explains the details of the allegedly fraudulent scheme and provides several representative examples of the claims at issue satisfies the pleading requirement of Rule 9(b)). State Farm's Complaint provides a level of detail as to Defendants Ruden and Quiroga that is sufficient at the pleading stage to satisfy the particularity requirement of Rule 9(b). Taken together, these allegations are sufficient, as discussed at great length *supra*, to state plausible claims for relief against Ruden and Quiroga.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motions to dismiss (ECF Nos. 20, 21, 23, 25, 32, 46) and DENIES Defendants' motion to strike (ECF No. 22).


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  May 27, 2015


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 27, 2015.


s/Deborah Tofil
Case Manager