# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

State Farm Mutual Automobile Insurance )
Company, )
  )
      Plaintiff, )
  )
      v. )   Case No. 2:14-cv-11700
  )
Pointe Physical Therapy LLC, )
New Era Physical Therapy, P.C., )   Hon. Paul D. Borman
New Era PT Services, Inc., )
Ram Gunabalan, M.D., )   Magistrate Judge
Sherif El-Sayed, )   Stephanie Dawkins
Amale Bazzi a/k/a Amanda Bazzi, )   Davis
Michigan Visiting Physicians, PC d/b/a )
Choice House Call, )
Mundy Pain Clinic P.C., )
Medical Evaluations P.C., )
Martin Quiroga, D.O, )
Andrew Ruden, M.D., )
James Beale Jr., M.D., )
Sean John Hoban, M.D., and )
Bio-Magnetic Resonance, Inc., )
  )
      Defendants. )
_____ )

## DEFENDANTS POINTE AND BAZZI'S MOTION FOR PROTECTIVE ORDER AS TO PLAINTIFF STATE FARM'S NON-PARTY SUBPOENAS

AMALE BAZZI and POINT PHYSICAL THERAPY, LLC, through

their attorneys, Seikaly, Stewart, and Bennett, P.C., object to State Farm's

Non-Party Subpoenas and move this Honorable Court to issue a Protective

Order pursuant to Fed.R.Civ.P. 26(b)(1), 26(c), and 45, for the reasons set forth in the attached Brief in Support.

Respectfully submitted,

SEIKALY STEWART & BENNETT, P.C.
Attorneys for Pointe Physical Therapy

By: __/s/ Larry W. Bennett_____
LARRY W. BENNETT (P26294)

Dated: January 24, 2017

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| State Farm Mutual Automobile Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:14-cv-11700 |
| | ) | |
| Pointe Physical Therapy LLC, | ) | |
| New Era Physical Therapy, P.C., | ) | Hon. Paul D. Borman |
| New Era PT Services, Inc., | ) | |
| Ram Gunabalan, M.D., | ) | Magistrate Judge |
| Sherif El-Sayed, | ) | Stephanie Dawkins |
| Amale Bazzi a/k/a Amanda Bazzi, | ) | Davis |
| Michigan Visiting Physicians, PC d/b/a | ) | |
| Choice House Call, | ) | |
| Mundy Pain Clinic P.C., | ) | |
| Medical Evaluations P.C., | ) | |
| Martin Quiroga, D.O, | ) | |
| Andrew Ruden, M.D., | ) | |
| James Beale Jr., M.D., | ) | |
| Sean John Hoban, M.D., and | ) | |
| Bio-Magnetic Resonance, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## BRIEF IN SUPPORT OF DEFENDANTS POINTE AND BAZZI'S MOTION FOR PROTECTIVE ORDER AS TO PLAINTIFF STATE FARM'S NON-PARTY SUBPOENAS

## **<u>TABLE OF CONTENTS</u>**

Index of Authorities ............................................................................ ii

Index of Exhibits ............................................................................... iii

Introduction ....................................................................................... 1

Standard of Review ........................................................................... 3

Procedural History ............................................................................ 4

Additional Important Background Information ............................... 8

Argument .......................................................................................... 11

Conclusion ........................................................................................ 17

Certificate of Service ....................................................................... 18

<u>INDEX OF AUTHORITIES</u>

**Cases**

*Cranmer v. Colorado Casualty Insurance Co.*, 2014 WL 6611313 (D. Nev. Nov. 20, 2014) ..................................................................................................4

*Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) ...........................8

*Palmer v. Stassinos*, 343 F. Supp. 1070, 107 (N.D. Cal.2005) ...............................2

**Statutes**

18 U.S.C. §1962(c) ....................................................................................................1

18 U.S.C. §1962(d) ...................................................................................................1

Michigan's No Fault Insurance Act.........................................................................2

**Other Authorities**

2011 H.B. 4936.........................................................................................................2

2011 S.B. 0294 ..........................................................................................................2

**Rules**

Fed.R.Civ.P.26(b).....................................................................................................3

Fed.R.Civ.P.26(c) .....................................................................................................4

Fed.R.Civ.P.34..........................................................................................................14

Fed.R.Civ.P.45..........................................................................................................3

## I<small>NDEX OF</small> E<small>XHIBITS</small>

Exhibit 1, Notice of Non Party Subpoenas ......................................................... 5

Exhibit 2, State Farm's Revised First Set of Document Requests to Defendant Amale Bazzi a/k/a Amanda Bazzi .......................... 14

Exhibit 3, State Farm's Revised First Set of Document Requests to Defendant Point Physical Therapy ............................................... 14

## INTRODUCTION

Using various boilerplate arguments it routinely makes in garden variety No Fault PIP claims, Plaintiff State Farm Mutual Automobile Insurance Company ("Plaintiff") filed this action against fourteen (14) corporate and individual Defendants (collectively, "Defendants"). Plaintiff's central claim is that Defendants submitted, via the US mail, fraudulent medical claims in violation of 18 U.S.C. §§ 1962(c) and 1962(d) of the RICO statute.

Discovery to date has exposed that the claims in State Farm's complaint are vastly overstated.  Because many claims have been resolved by state court orders, settlement, or application of the statute of limitations, the actual amount in controversy is a fraction of what State Farm claimed. In addition, State Farm has been both unable and unwilling to identify, with the specificity required in fraud cases, any individual who allegedly received fraudulent treatment.  Instead, State Farm claims that every single treatment of every single patient was improper because it was done for the benefit of the Defendants, not the patients.  State Farm wishes to ignore that medical providers are entitled to reasonable profits from their services

to patients and that whether those profits are derived from reasonable charges is a simple matter of state law.

These flaws do not deter State Farm from pursuing this matter. That is because the true goal of Plaintiff is to use its vast wealth and resources to bludgeon Defendants into submission. Plaintiff has notoriously filed similar lawsuits against hundreds of other defendants as part of a manifest effort to interfere with their insureds' needs for medical treatment following a motor vehicle collision. These lawsuits follow State Farm's (and some of its fellow insurers) well-documented, failed attempts to change Michigan's No Fault Insurance Act for its own financial benefit. *See* e.g., Dkt. 23-2, 2011 H.B. 4936 and legislative analysis of same; see also Dkt. 23-3, 2011 S.B. 0294.[2] The instant lawsuit is an attempt to achieve through litigation what Plaintiff has not been able to achieve through legislative change.

A key component of Plaintiff's bludgeoning strategy is to engage in massively oppressive discovery that makes the cost of defense exceed the true amount in controversy. During earlier proceedings in this case,

---

[2] The Court can take judicial notice of legislative history. See e.g., *Palmer v. Stassinos*, 343 F. Supp. 1070, 107 (N.D. Cal.2005).

Magistrate Judge Hluchaniuk determined that phased discovery was appropriate, in part, because of the oppressive tactics adopted by Plaintiff. The Court stated:

> This court accepts Defendants' argument that complying with Plaintiff's existing discovery requests would be extremely burdensome. The scope of what is asked for, on its face, clearly demonstrates the potential burdensome nature of the requests.

Dkt. 138 at 4. As discussed in detail below, the subpoenas at issue are part of the bludgeoning strategy that seeks voluminous documents that are both duplicative and overbroad.  The cost of storing and processing the deluge of documents, combined with their relatively minimal ability to produce additional information, establishes that the discovery sought by these subpoenas is disproportionate to the needs of this case.

### STANDARD OF REVIEW

While subpoenas may be issued to third parties, pursuant to Fed.R.Civ.P.45, those requests are not without limits.   The scope of discovery is governed by Fed. R.Civ.P 26(b):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and **proportional to the needs of the case**, considering the importance of the issues at stake in the action, **the amount in controversy**, the parties' relative access to relevant information, the parties' resources, **the importance of the discovery in**

**resolving the issues**, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

**Emphasis added**.

Fed.R.Civ.P. 26(c) provides that the court may, for good cause, "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Upon showing of good cause by the moving party, the burden shifts to the party seeking discovery to show whether the requested discovery is relevant to the claims and defenses and is proportionate to the needs of the case. *Cranmer v. Colorado Casualty Insurance Co.*, 2014 WL 6611313 (D. Nev. Nov. 20, 2014)("When deciding whether to enter an order protecting a party from producing discovery, the court's inquiry primarily focuses on relevance, proportionality, and harm to the producing party.")

## PROCEDURAL HISTORY

On October 5, 2015 Magistrate Judge Hluchaniuk ordered discovery phased in this matter, finding that compliance with Plaintiff's first set of discovery requests would be burdensome on Defendants. [Dkt. 138 at 4]. Unsatisfied with the Magistrate Judge Hluchaniuk's control of discovery, on or about March 11, 2016, State Farm filed a "Motion for Clarification"

seeking permission to issue third party subpoenas for the bank records of Defendants. [Dkt. 147].

State Farm attached one exemplar subpoena rider, directed towards Citizens Bank, to its motion.    [Dkt. 147-1, Exhibit 1].    This exemplar subpoena sought information possessed by the bank and related to either New Era PT Services or Pointe Physical Therapy, P.C. *Id.*

On March 28, 2016 Defendants Bazzi and Pointe filed a response in opposition to State Farm's Motion focused mainly on the appropriateness of the subpoena for Phase I discovery. [Dkt. 151].    That response was concurred with and joined by all other Defendants [Dkts. 153 and 154].

On June 2, 2016 this Court held a hearing on the motion and subsequently denied Plaintiff's motion. [Dkt. 167].  In its order, the Court stated, "the third party discovery at issue seems appropriate for and should be permitted during the next phase of discovery," *Id.* at 10, but also noted both parties thought additional motion practice related to Phase I discovery might be necessary.  *Id.* at 9-10.  The Court also noted the scope of the second phase of discovery – including how many and what claims are at issue – remained to be determined. *Id.* at 9.  Finally, this Court found

"the parties seem ready to move on to the next phase of discovery." *Id.* at
10.

In response to the Order, Defendants Bazzi and Pointe filed a Partial
Objection. [Dkt 169].  The sole focus of the Partial Objection was the finding
that the parties seemed ready to move on to the next phase of discovery
and that Phase II discovery should commence as soon as possible.

On October 4, 2016  Judge Borman issued an Opinion and Order (1)
Denying Defendants' Objections to Magistrate Judge Davis' June 16, 2016
Order (2) Affirming the Magistrate Judge's June 16, 2016 Order, (3)
Determining Phase 1 of Discovery Complete and Authorizing State Farm to
Issue the Requested Third Party Bank Subpoenas.  A status conference was
also set for November 1, 2016.  [Dkt. 174].  The Court found that while "full
discovery may commence immediately" it should still be "limited with
respect to specific patient information to the 209 patients identified in State
Farm's Complaint.  *Id.* The Court additionally ordered that "State Farm
may proceed with issuance of the third party bank subpoenas as
requested." *Id.*

On October 26, 2016 State Farm sent Defendants a "Notice of Non-
Party Subpoenas."  Attached as Exhibit 3.  For the first time, in that notice,

State Farm informed Defendants that the subpoenas being issued were far broader than the subpoena previously presented to the Court. The subpoenas would be served on the following ten financial institutions: The Huntington National Bank; Bank of America, N.A.; Fifth Third Bank; PNC Bank; TCF Bank; Citizens Bank; JPMorgan Chase Bank, N.A.; Comerica, Inc.; LOC Federal Credit Union; and Merrill Lynch, Pierce, Fenner & Smith, Inc.

Plaintiff's new subpoena also added the following request:

> "…any and all documents, or records, in either paper or electronic form, including but not limited to account statements, cancelled checks, deposit slips, withdrawal slips, records of wire transfers, signature cards, loans and/or loan applications, documents related to the opening and/or closing of any account, documents relating to any lockboxes and/or lockbox services (including documents relating to the opening and/or closing of any lockbox), document related to any reporting or filing with any governmental agency including any CTRs and any Form 1099s, but excluding any SARs…"

*See* Exhibit 3.   The subpoenas seek this information for all defendants **and three additional non-parties**: Affiliated Diagnostic of Oakland, LLC; Get Well Medical Transport Co. a/k/a GETWELL Medical Transport; and Transport Us LLC.

7

On November 1, 2016 the parties attended a status conference before Judge Borman during which the issues of proportionality, scope of the case, and how many of the originally listed 209 patients listed in Plaintiff's complaint actually remain in the case were discussed. During the conference, counsel for State Farm acknowledged that fewer than 209 patients remain relevant to this dispute. From October 30 to November 14, 2016 the parties engaged in an e-mail exchange about the subpoenas in an attempt to resolve Defendants' objections to the subpoenas and to discuss which of the 209 patients remain at issue. A telephone conference was held on November 14. Unable to resolve the issues, the parties filed a joint statement with this Court pursuant to Judge Borman's October 4, 2016 order outlining the dispute. A second joint statement was filed on December 5, 2016 after Plaintiff refused to suspend the third-party banks' compliance with the subpoenas pending a decision by this court.

On January 10, 2017 an informal conference was held before this Court regarding issues raised in the joint statements. Defendants Bazzi and Pointe file the instant motion pursuant to that conference.

### ADDITIONAL IMPORTANT BACKGROUND INFORMATION

Throughout this same period of time, the parties have conducted several "meet and confers" regarding issues each side has with the other's discovery responses. During these discussions, Defendants have assiduously sought to engage Plaintiff in a discussion related to which of the 209 patients are actually in dispute in this case. Plaintiff, equally assiduously, avoids providing that information. The reason for the avoidance is simple.

During earlier proceedings, Plaintiff's counsel was pressed on the record by Magistrate Judge Hluchaniuk on the impact that the reduction of the number of patients involved would have in this case. The Court noted in its opinion following that oral argument that "Plaintiff's counsel conceded during oral argument that if a substantial portion of the 209 specific alleged instance of fraudulent conduct cannot be proven it would significantly impair plaintiff's ability to prove a RICO conspiracy." Dkt. 138. at 5.

Following up on that concession and similar comments made to Judge Borman since, Defendants have sought to finalize the discovery as to the patients whose claims have been resolved. This should be a relatively easy task based on readily available objective information. However,

Plaintiff is stalling and otherwise delaying moving forward on such a finalization. During a recent "meet and confer" on this issue, Plaintiff refused to *even consider* an order proposed by Defendants that would define the patients at issue in this case. Its reason for refusing to even look at the order: "Why would we?" Plaintiff's counsel then attempted to justify this outright refusal by claiming that (a) the complaint in this case lists 209 patients; (b) the defense motions to dismiss were denied; (c) thus the complaint sets the scope of the case and there is nothing to be gained by Plaintiff resolving the number of patients that are actually (as opposed to allegedly) at issue.

Plaintiff's obdurance on this issue reflects the importance of it to applying the proportionality test. Plaintiff is aware the true amount in controversy does not support the amount of discovery costs it seeks to impose in this case. Thus, the "delay, deny, defend" tactics State Farm is frequently accused of in claims processing is now being applied in this litigation. This Court is asked to not countenance such obstructionist behavior. The very next step in this case should be for the parties to pare this case down to the true number of patients/claims that are involved.

Complicating matters further, despite Defendants' best efforts to obtain an estimate of the amount of data that has or might be produced by the third party banks, it is so voluminous that no one – not even the banks themselves - can provide Defendant with an estimate.  This is precisely why Plaintiff refuses to engage in good faith discussions to limit the scope of this case. It also explains why Plaintiff was so desirous of ending Phase 1 discovery.

Finally, as detailed further below, most of the documents sought by the subpoenas are duplicative.

A<span style="font-variant:small-caps">RGUMENT</span>

**I.  The Scope of this Case is Smaller Than the Allegations in the Complaint and the Discovery Sought is Disproportionate to the Case**

During the Phase I discovery, Defendants focused on how many of the 209 patients listed in charts attached to the Complaint remain at issue. Discovery established that the majority of patients are no longer in controversy due to a combination of the following factors:

1. Release through settlements with patients in claims brought by the patients.

11

2.  Release through settlements with Defendants through claims brought directly by Defendants.

3.  Dismissal of claims by Defendants based on orders entered in cases litigated in Michigan state courts.

4.  Expiration of the statute of limitations on claims that were not pursued by Defendants after denial of payment by Plaintiff.   (ie., Neither the patient nor the Defendants challenged the denial of payment.)

Of the ninety-eight "RICO event" patients treated by Pointe that were included in Plaintiff's complaint, there are only twenty-eight Patients for which Pointe received payment through the claims process. [1]  The total amount paid to Pointe related to those patients and at issue in this case is $198,308.99.   As to the rest of the patients, payments were received through litigation that resolved the claims as to those patients, or no payments were made and the claims are now barred by the statute of limitations. Similarly, of the 109 "RICO event" patients treated by New Era Physical Therapy or PT Services listed in the complaint, there are only forty

---

[1] Numbers of patients and amounts paid are based on two charts produced by State Farm to Defendants in January 2016 in response to a Fed. R. Civ. P. 30(b)(6) request.

four patients that State Farm paid a defendant for care and did not litigate. The total amount paid by State Farm for those patients totals $185,201.48. Even considering the relatively small number of patients treated by other defendants, these totals combined are far less than the $775,000 State Farm alleges it has wrongfully paid.

In a further effort to frustrate narrowing the scope of this case Plaintiff also refuses to engage in any discovery related to the reasonableness of the treatment provided to any specific patient. During "meet and confers" on this topic, Plaintiff is dismissive of its obligation to prove its case on a patient by patient basis. Quite clearly, however, it is impossible to conclude that all of the payments received by Defendants were for fraudulent treatment. After all, State Farm uses sophisticated claim review companies and a legion of specially trained adjusters to review claims before they are paid. Thus, it is virtually certain that at least some of the payments made were for proper treatment making the amount in controversy something materially less than the total payouts mentioned about.

The number of patients at issues and amount in controversy should be discussed, if not resolved, before marginal and disproportionate

13

discovery is allowed. In the event these issues can be resolved early, not only may the cost, burden, and time required to litigate this case be decreased but the possibility of settlement will be enhanced.

## II.     <u>Documents Sought by the Subpoenas are Duplicative</u>

In addition, many of the documents sought by Plaintiff *have already* been requested from Defendants themselves under Fed.R.Civ.P. 34. While acquiring these records from third party banks may have been necessary in the context of Phase I, a point inherent in Plaintiff's original Motion for Clarification, it is duplicative and unnecessary in the context of Phase II. Those documents include, but are not limited to, the following categories:

- All documents reflecting payments made to or received from any Defendant [Request No. 10, State Farm's Revised First Set of Document Requests to Bazzi, attached as Exhibit 2] [2];

- All documents reflecting lease payments made by or on behalf of You or any Defendant during the period any Patient Identified in the Complaint was treated [*Id.* at No. 14];

---

[2] Requests submitted to Pointe Physical Therapy are nearly identical to those submitted to Amanda.  Plaintiff's requests to Pointe are attached as Exhibit 5.

- All documents reflecting payment made to or received from Fatmeh Chebba, Hala Moussa, f/k/a Hala Makki, Gigi John, Vinod Joshi, and/or their agents or employees [*Id.*at No. 16].

- All documents reflecting payments made to or received from Megan Rutledge [*Id.*at No. 19];

- All documents reflecting payments made to or received from Transport US, LLC, Get Well Medical Transport Co., a/kia/ GETWELL Medical Transport, and/or their owners, agents, officers, employees [*Id.*at No. 22];

- All documents reflecting any payments made to or received from any attorney regarding the "recruitment, solicitation or procurement of patients/clients. [*Id.*at No. 25]:

- All non-privileged documents reflecting payments made to or received from any attorney regarding any Patient Identified in the Complaint [*Id.*at No. 27];

- All document reflecting payments made to or received from any medical or legal referral service, or any entity or individual who referred any Patient Identified in the Complaint [*Id.*at No. 30];

15

- All documents reflecting payments made to or received from any billing agency or biller [*Id.*at No. 35];

- All documents reflecting payments made to or received from any doctor, clinic or facility where any Patient Identified in the Complaint received services [*Id.*at No. 38];

- All documents reflecting payments made to or receive from Nesreen Bazzi, Antonio Delara, Luis Jorge a/k/a Luise George, Warren Ringold, Youself Bakri, Affliated Diagnostics of Oakland, Affliated Medical of Dearborn and/or Insight Diagnostics, LLC regarding the Patients Identified in the Complaint [*Id.* at No. 41].

In the absence of Plaintiff's Motion for Clarification, the parties would have exchanged revised discovery responses once Phase II began. That has now happened.   But now, instead of working through the traditional meet and confer process and litigation process, Plaintiff seeks to work outside of it. The end result being that Plaintiff will receive duplicative documents from the banks that go far beyond what they would be able to acquire in the normal course of discovery.   In addition, documents responsive to the subpoenas are apparently so voluminous that neither the subpoenaed banks nor Plaintiff have been able to provide

Defendants with an estimate.   For this reason alone the subpoenas are duplicative, unnecessary and should be quashed.

## CONCLUSION

The foregoing issues will need to be resolved by this Court in future proceedings.     They are raised here because the decision on the proportionality of the at-issue subpoenas must be determined based on the actual status of the case, not the *alleged* value.   This Court is also asked to take into account the true motivation of the Plaintiff.

In addition, these subpoenas fall outside the bounds of Rule 26.   First, the proportionality analysis is hindered by Plaintiff's obstructionist tactics that are motivated by its overall strategy to make the case too expensive to defend.   Additionally, the importance of the subpoenas to resolving this dispute is negligible and unproven in light of other pending discovery. Nearly identical records have been requested from the Defendants themselves.   The additional information sought by the subpoenas is yet another technique State Farm employs to broaden the scope of the case, go on fishing expeditions to find others to litigate against, and ultimately bludgeon Defendants into positions of weakness.     This oppressive technique is good cause for a protective order to be issued.

Respectfully submitted,

SEIKALY STEWART & BENNETT, P.C.
Attorneys for Pointe Physical Therapy

By: __/s/ Larry W. Bennett_____
LARRY W. BENNETT (P26294)

Dated: January 24, 2017

---

## CERTIFICATE OF SERVICE

---

Deirdre Bush hereby certifies that on this 24th day of January 2017, she filed the foregoing document with the Clerk of the Court via the Court's ECF system, which will automatically serve the document upon all counsel of record and of *pro se* defendant, Andrew Ruden.  I further certify that I emailed a copy of same and deposited a copy in the U.S. Mail, first-class postage pre-paid to: 5947 Barnstable Ct, W. Bloomfield, MI 48322 and andyruden@comcast.net.

/s/ Tiffany Ellis